**UNITED STATES ex rel. Gilbert RIVERA, Petitioner,**

v.

**Gayle FRANZEN, et al., Respondents.**

**No. 80 C 5139.**

United States District Court,
N.D. Illinois, E.D.

May 27, 1983.

Susan Bandes, American Civil Liberties Union, Chicago, Ill., for petitioner.

Thomas Crooks, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

### WILLIAM T. HART, District Judge.

Petitioner Gilbert Rivera ("Rivera") filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 attacking the legality of a murder conviction entered by the Circuit Court of Cook County. Rivera asserts that he was denied his Sixth Amendment right to the assistance of effective trial counsel.

The respondents have moved to dismiss the petition pursuant to Rule 9(b), *Rules Governing § 2254 Cases,* or in the alternative for summary judgment, Fed.R.Civ.P. 56(c). As an alternative to dismissal or summary judgment, the respondents have moved for modification of a previous order entered by Judge Getzendanner granting an evidentiary hearing. Rivera has filed a cross motion for summary judgment.

## I. STATEMENT OF FACTS

On November 26, 1972, Rivera was arrested for the murder of Francis Madsen. Fabriciano Rivera ("Fabriciano"), the petitioner's father, consulted with attorney Howard Pomper, who arranged for attorney Lionel Livingston to represent Rivera. After a jury trial in which Livingston presented a self-defense claim, Rivera was convicted of murder and received a 20–60 year sentence.

On appeal to the Illinois Appellate Court, Rivera raised issues of prosecutorial misconduct, insufficiency of evidence, inadmissibility of a photograph of the deceased, and excessive sentencing. The appellate court rejected these contentions and affirmed the conviction, *People v. Rivera,* 32 Ill.App.3d 500, 336 N.E.2d 255 (1st Dist.1975), and the Illinois Supreme Court denied leave to appeal. 61 Ill.2d 603.

In November, 1976, Rivera filed a habeas corpus petition in federal district court alleging the same errors as were raised in the Illinois courts, but summary judgment was entered against him and the petition was dismissed.

On April 12, 1977, Rivera filed a *pro se* petition for post-conviction relief in the Circuit Court of Cook County pursuant to Ill. Rev.Stat. ch. 38, § 122–1 *et seq.* He alleged that he had been denied effective assistance of counsel because of Livingston's failure to investigate certain facts concerning Rivera's psychological history which might have formed the basis for an insanity defense or have been helpful in arguing for mitigation of sentence. The circuit court denied post-conviction relief, the appellate court affirmed, and the Illinois Supreme Court denied leave to appeal.

Rivera then filed the instant habeas petition claiming that he had been denied effective assistance of counsel due to Livingston's failure to investigate an insanity defense. Rivera alleges that he had an extensive history of mental health problems about which Livingston was informed. In support of his claim, Rivera submitted an affidavit by his father, Fabriciano Rivera, in which Fabriciano swore that he informed Livingston of Rivera's mental history, including his attempted suicides. The respondents submitted an affidavit of Livingston denying that he ever met Fabriciano, or that he was told of Rivera's mental problems.

On May 27, 1981, Judge Getzendanner denied respondents' motion for summary judgment on the issue of ineffective assistance of counsel, finding that the record indicated that Rivera had a long history of mental and emotional difficulties, and that based on Fabriciano's affidavit there existed a factual issue as to Livingston's knowledge. Accordingly, Judge Getzendanner allowed for additional discovery, and set the matter down for an evidentiary hearing to

determine whether Livingston knew or should have known of Rivera's past psychological problems.

## II. MOTION TO DISMISS

 At the outset, the respondents argue that Rivera's habeas petition should be dismissed because he failed to exhaust the instant claim prior to filing his first habeas petition and failed to pursue it in that initial petition. Respondents contend that, based on *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) and Rule 9(b), *Rules Governing § 2254 Cases,* the petition must be dismissed as an "abuse of the writ." [1]

Rivera argues that *Rose v. Lundy* is not applicable to the instant case because the majority there did not address the issue of successive habeas petitions. Moreover, he contends that he had not yet exhausted the instant claim before filing his initial habeas petition, and that the filing of this second petition does not constitute an abuse of the writ. The Court concludes that the Supreme Court's holding in *Rose v. Lundy,* is inapposite to the instant case, and that the filing of the second petition does not constitute an abuse of the writ.

In *Rose v. Lundy,* the Supreme Court held that the exhaustion rule in 28 U.S.C. § 2254 required a federal district court to dismiss a "mixed petition," that is, a habeas petition containing any claims that had not been exhausted in the state courts. Although in announcing the total exhaustion rule Justice O'Connor discussed possible consequences to habeas petitioners who drop unexhausted claims in order to pursue exhausted ones, five justices explicitly refused to join that portion of the opinion (Section IIIC). Consequently, *Rose v. Lundy* is not dispositive of the issue here since this is not a mixed petition case. Further, there is no question but that Rivera's claim has been fully exhausted in the state courts. Cf. *Duckworth v. Serrano,* 454 U.S. 1, 102

S.Ct. 18, 70 L.Ed.2d 1 (1981) (*per curiam*) (petition must be dismissed where claim not exhausted).

Moreover, the Court finds that petitioner's claim does not constitute an abuse of the writ. In *Sanders v. United States,* 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963), the Court stated that "if a prisoner deliberately withholds one of the two grounds for federal collateral relief at the time of filing his first application, in the hope of being granted two hearings ... he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground." However, "Rule 9(b) must be applied narrowly as it was not intended to abrogate the historical role of the writ ' "as an effective and imperative remedy for detentions contrary to fundamental law." ' See *Sanders,* 373 U.S. at 17–18, 83 S.Ct. at 1078–1079; *quoting Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963)." *Robinson v. Fairman,* 704 F.2d 368, 370 (7th Cir.1983).

*Sanders* contemplates a case where a prisoner deliberately withholds one of two grounds of relief when both grounds exist, fully exhausted, at the time of the filing of the initial petition. In such a situation, dismissal of the subsequent petition as an abuse of the writ is proper, where it is pleaded and proved that the petitioner was able to include all of his claims in the first petition but knowingly chose not to do so in order to obtain a second hearing.

The instant claim is not the type prohibited by *Sanders.* At the time Rivera initially sought habeas relief, this claim was unavailable to him because it had not been exhausted in the state courts. The Supreme Court's decision in *Sanders* does not require a prisoner to delay filing a habeas petition until all possible claims have been exhausted. Rather, *Sanders* requires a habeas petitioner to present all available and exhausted claims in a single petition. Since Rivera's ineffective assistance claim was unex-

---

1. Rule 9(b) states: "A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on

the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constitutes an abuse of the writ."

hausted and therefore unavailable at the time his first habeas petition was filed—and his detention is arguably "contrary to fundamental law," *Fay v. Noia, supra*—his filing of the instant claim does not constitute an abuse of the writ. The motion to dismiss is denied.

### III. RESPONDENTS' MOTION FOR SUMMARY JUDGMENT

■ The respondents argue that there are no material issues of fact on the ineffective assistance counsel claim and that they are entitled to judgment as a matter of law. They point to the deposition testimony of both Rivera's father and Livingston, and the affidavit of Howard Pomper, an attorney associated with Livingston, to show that Fabriciano's sworn averment that he informed Livingston of his son's mental health problems is incorrect. They argue that the evidence shows that Fabriciano met with Howard Pomper, and not with Livingston (Rivera's trial counsel). Since Fabriciano never met Livingston, Fabriciano could not have informed Livingston of Rivera's alleged mental condition, and if Livingston had not known of Rivera's past mental problems he would have had no duty to investigate. *See Harkins v. Wyrick,* 552 F.2d 1308 (8th Cir.1977) (petitioner not denied effective assistance of counsel for counsel's failure to investigate claim of mental incompetence to stand trial, where counsel had no knowledge of petitioner's mental problem until day of trial). Therefore, the respondents argue that there exist no issues of fact as to Livingston's knowledge of information which would have triggered a duty on his part to investigate an insanity defense or to argue such facts in mitigation of sentence.

Rivera opposes the motion for summary judgment on two theories. First, Fabriciano's affidavit shows that a factual dispute exists as to whether Fabriciano and Livingston ever met and whether Fabriciano communicated the vital information. Second, even if Fabriciano did not directly tell *Livingston* of Rivera's mental history, it is possible that that information was communicated to another attorney related in practice to Livingston, *i.e.,* to Howard Pomper. Pomper has stated that he met with Fabriciano, was paid by Fabriciano, and that he referred the case to Livingston. If Fabriciano told *Pomper* of Rivera's mental problems, there would exist a question as to whether that knowledge must be imputed to Livingston. The precise nature of the relationship between Pomper and Livingston is unclear. The inferences from the affidavits and deposition testimony suggest that a nice legal question may be presented here, depending upon the facts found by the Court.

Summary judgment in favor of the respondents would be inappropriate, and the motion is denied.

### IV. RIVERA'S MOTION FOR SUMMARY JUDGMENT

Rivera has moved for summary judgment on the ground that in her Memorandum Opinion, Judge Getzendanner held that Rivera's counsel should have taken steps to ascertain petitioner's mental condition at the time of the offense. Rivera argues that in light of this "holding," an evidentiary hearing is unnecessary and that summary judgment should be entered for petitioner and the case should be remanded to state court for a new trial.

In holding that Livingston should have taken steps to discover Rivera's mental history, Judge Getzendanner *assumed, for the purpose of deciding the summary judgment motion then pending,* that Livingston was told of petitioner's mental history. In her Memorandum Opinion, she stated:

In deciding motions for summary judgment, all questions of fact must be resolved adversely to the movant, and for purposes of this motion, we must proceed on the assumption that trial counsel was fully aware of Rivera's history.

Given these facts, we hold that, at a minimum, counsel should have taken steps to ascertain Rivera's mental condition at the time of the offense.

Slip op. at 7. She did not decide that Livingston had been told of Rivera's mental

problems, but merely accepted as true the affidavit proffered in opposition to the summary judgment motion. Rivera's motion is denied.

## V. EVIDENTIARY HEARING

■ The respondents have moved for a modification of the order entered by Judge Getzendanner for an evidentiary hearing. They ask the Court to require that, in order to gain habeas relief, Rivera must not only prove his attorney's failure to meet the minimal standards of professional competence, *see United States ex rel. Williams v. Twomey,* 510 F.2d 634, 640–41 (7th Cir.), *cert. denied,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975), but also that he suffered prejudice by the failure to raise the insanity defense. In opposing the motion, Rivera argues that if the Court finds that his counsel failed to investigate a colorable insanity defense, he has no burden to show that any prejudice resulted and the writ must issue.

The question of whether Rivera should be required to show prejudice resulted from his counsel's failure to investigate an insanity defense is a difficult one. The "prejudice" Rivera would have to show, according to the respondents, is that it is not clear beyond a reasonable doubt that Rivera would have been convicted even if the defense had been offered. Phrased another way, the question is whether the unconstitutional error here—the alleged ineffective assistance of counsel—may be considered harmless error.

The Supreme Court has stated that "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942).

But this apparently clear statement does not answer the question at hand, since Seventh Circuit precedent is confusing. *Compare United States ex rel. Healey v. Cannon,* 553 F.2d 1052, 1057 n. 7 (7th Cir.), *cert. denied,* 434 U.S. 874, 98 S.Ct. 221, 54 L.Ed.2d 153 (1977) ("The holding of the Illinois Appellate Court that any mistaken advice afforded Healey constituted harmless error due to overwhelming evidence of guilt is erroneous.... [T]he harmless error doctrine is patently inapplicable to the claimed deprivation of a due process right so fundamental as the effective assistance of counsel," citing *Glasser*); *with Wade v. Franzen,* 678 F.2d 56, 59 (7th Cir.1982) ("A minority of courts hold that the harmless error doctrine may never be used in an ineffective assistance of counsel case.... The Supreme Court has not ruled on the issue; nor has this circuit.... We therefore decline to exclude all possibility of finding harmless error in a case where the defendant has not had effective assistance of counsel." Court does not cite either *Glasser* or *Healey v. Cannon*.).

While the recent decision in *Wade v. Franzen* seems to contemplate the possibility of a harmless error inquiry in every ineffective assistance of counsel case, this Court believes that the Court of Appeals has left open different approaches for two distinct types of cases. First is the *Wade v. Franzen* situation itself, where the trial counsel is alleged to have made various trial blunders. In such a case, the reviewing court can search the trial record to determine if "the defendant would have been convicted even if the blunder had not been committed.... Wade does not allege incompetence of counsel so pervasive that no one knows what really happened in this case.... There are some criminal prosecutions so open and shut that no rational jury would acquit no matter how dazzling the defense lawyer." 678 F.2d at 59. The harmless error doctrine makes sense where the reviewing court can search the record to see if the evidence is so overwhelming that even in the absence of trial counsel's blunders, no rational jury could acquit.

But the "failure to investigate" ineffective assistance of counsel claim is quite different. Here, there is no way to examine the record of the trial to determine if no rational jury could acquit, since the particular defense was never investigated, much less presented. This is especially true

where the defense never investigated is an insanity defense. In such a case, nearly all of the evidence offered by the state on the merits is irrelevant to the question of whether the defendant was legally sane at the time of the act. An examination of the trial record will not help a reviewing court to determine whether a rational jury could decide that the state had proved beyond a reasonable doubt that the defendant was sane, see Ill.Rev.Stat. ch. 38, §§ 3–1, 3–2(b), 6–2, and 6–4 (when insanity is raised by defendant, state must address this issue and has burden of proof beyond a reasonable doubt), since the issue never was raised.[2]

In a case on all fours with this one, Judge Marovitz held that the petitioner need not show the lack of harmless error beyond a reasonable doubt. *United States ex rel. Lee v. Rowe,* 446 F.Supp. 1039, 1048 (N.D. Ill.1978) (defendant at trial pleaded self-defense; trial counsel failed to investigate plausible insanity defense; court relies on *Glasser* and *Healey v. Cannon,* and habeas petition is granted).

This Court would be awash in a sea of speculation were it to make a determination that a colorable insanity defense, never presented because of a failure to investigate facts allegedly known to counsel, could not have persuaded a jury that the petitioner was insane and therefore not legally responsible for his actions. The context available to the reviewing court in a *Wade v. Franzen* type case—the evidence submitted by both sides on the merits—does

2. A careful reading of a case principally relied upon by the Seventh Circuit in reaching its holding in *Wade v. Franzen* shows that "trial blunder" situations are quite distinct from "failures to investigate." In *Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir.1978) (en banc), cert. denied, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979), the court held that "[w]hen the claim of ineffective assistance of counsel rests upon *specific acts and omissions of counsel at trial,* as it does in this case, relief will be granted only if it appears that the defendant was prejudiced by counsel's conduct." *Id.* at 1331 (emphasis added) (habeas relief denied where petitioner claimed ineffective assistance for counsel's failure to object to the admissibility of evidence). In holding that prejudice must be shown, the Ninth Circuit distinguished Supreme Court precedent such as *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), and *Glasser v. United States, supra,*—which held that no demonstration of prejudice is required to show ineffective assistance of counsel—on grounds that in such cases, "*the evil lies in what the attorney does not do, and is either not readily apparent on the record, or occurs at a time when no record is made.* 'Thus an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation,' [*Holloway v. Arkansas*] [435 U.S.] at 490, 98 S.Ct. at 1182. This situation is to be distinguished from the usual one in which a harmless error rule is applied: '*In the normal case where a harmless error rule is applied, the error occurs at trial and its scope is readily identifiable.* Accordingly the reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury.' *Id.* at 490, 98 S.Ct. at 1182." *Cooper v. Fitzharris, supra,* at 1332 (emphasis added).

This careful application of Supreme Court precedent by the Ninth Circuit, in a case wholeheartedly endorsed by our own Seventh Circuit in *Wade v. Franzen, supra,* at 59 (explicitly rejecting Judge Hufstedler's dissenting opinion in *Cooper v. Fitzharris*), shows that when the claimed ineffective assistance occurred de hors the record (as in a failure to investigate case), no prejudice need be shown. Otherwise the Court would be required to engage in "unguided speculation." *Holloway v. Arkansas, supra,* 435 U.S. at 490, 98 S.Ct. at 1182.

A question might be raised as to why *no prejudice* need be shown where there has been a *failure to investigate* an insanity defense, while a *showing of prejudice would be required* where the claim of ineffective assistance of counsel rests on the attorney's *conscious decision* (after investigation of the facts) *not to raise an insanity defense.*

Two reasons underly the distinction. First, the reviewing court will have a meaningful record to study where the attorney performed an investigation. The potential for the failure or success of the foregone insanity defense may be intelligently examined, since the information turned up by the attorney's investigation will have been made known to the court, and the reasons for the attorney's decision not to advance the defense also will be clear.

Second, the focus of the entire Sixth Amendment inquiry is whether trial counsel shouldered the burden of representing the client in accordance with the minimal standards of professional competence. *United States ex rel. Williams v. Twomey, supra.* A presumption of professional competence should exist where the attorney fulfilled the basic duty of investigating the facts. No such presumption should lie where the attorney consciously refused to perform this basic, essential duty.

not exist where the focus of a defense never made had nothing to do with the merits.

*United States v. Cooper,* 580 F.2d 259, 263 n. 8 (7th Cir.1978), cited by the respondents for the proposition that a showing of prejudice is required, is inapposite. *Cooper* was a case of an alleged "trial blunder" (knowing waiver of meritless insanity defense), rather than a "failure to investigate" (the defendant in *Cooper* refused to undergo a psychiatric examination, thereby compelling his counsel to withdraw a proposed insanity defense).

The respondents' motion to modify the order granting an evidentiary hearing, so as to require the petitioner Rivera to show that he was prejudiced by his counsel's alleged failure to investigate an insanity defense, is denied.

THEREFORE IT IS ORDERED that

(1) Respondents' motion to dismiss, or in the alternative for summary judgment, is denied.

(2) Petitioner's motion for summary judgment is denied.

(3) Respondents' motion for modification of the order for an evidentiary hearing is denied.

(4) Status hearing is set for June 8, 1983, at 9:45 a.m., to set dates for close of discovery and an evidentiary hearing.