**Charles JONES, Petitioner-Appellant,**

**v.**

**W.J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.**

No. 82–2138.

United States Court of Appeals, Fifth Circuit.

Dec. 23, 1983.

2. *United States v. Castillo*, 524 F.2d 286 (10th Cir.1975); *United States v. Martinez*, 514 F.2d 334 (9th Cir.1975).

Thomas B. Taylor, Otha T. Carpenter, Houston, Tex. (Court appointed), for petitioner-appellant.

Charles Jones, pro se.

Linda Marshall, Asst. Atty. Gen., Houston, Tex., Paula C. Offenhauser, Leslie A. Benitez, Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Chief Judge, BROWN, GEE, RUBIN, REAVLEY, POLITZ, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY, and HIGGINBOTHAM, Circuit Judges.*

PATRICK E. HIGGINBOTHAM, Circuit Judge:

■ Today we strike at two uncertainties often present when a prisoner seeks to avoid dismissal of his claim made for the first time in a successive petition for writ of habeas corpus. We decide that in the prosecution of a federal habeas petition a petitioner is bound by the knowledge chargeable to his competent habeas counsel. We decide that the sole fact that the new claims were not exhausted when the earlier federal writ was prosecuted will not automatically excuse their omission.

I

Charles Jones is now serving a life sentence in the Texas state prison following his conviction in 1968 of attempted burglary enhanced by two prior convictions. On direct appeal Jones did not attack his conviction for attempted burglary but attacked one of the two prior enhancing convictions, urging that the indictment in that case did not state an offense and that the state's proof by prison records rather than by a certified copy of the judgment was insufficient. That attack was rejected. *Jones v. State,* 449 S.W.2d 277 (Tex.Cr.App.1970).

In the next thirteen years Jones filed six pro se applications for a writ of habeas corpus in the state courts. This, Jones's third federal petition, asserts fifteen grounds for relief. Seven grounds are "new" [1] and eight have been considered in previous applications.

The district court dismissed Jones's petition, pursuant to Rule 9(b) of the rules governing habeas corpus, as an abuse of the writ, finding the eight grounds that had been considered in Jones's prior petitions ought not be considered again, and the seven new claims would not be considered because Jones's failure to raise them in his prior petitions was inexcusable. Jones appealed and in an unpublished opinion we remanded for an evidentiary hearing. At the ordered evidentiary hearing, only Jones testified. He explained that he learned of his new claims from fellow inmates after his second federal petition. The district

---

* Judges Randall and Davis did not participate in this decision.

1. Jones's earlier federal applications were denied on March 24, 1972 and on December 17, 1976. The seven new grounds alleged by Jones are as follows:

(1) Defective indictment in state cause number B–2881 in that it alleges burglary of a house at night with intent to commit theft;

(2) Life imprisonment for three non-violent felonies constitutes cruel and unusual punishment;

(3) Jury charge in state cause no. 3084 varied from indictment; i.e., once the court defined "theft," it used the term "theft" in the rest of the charges instead of restating the definition each time;

(4) Discrimination in grand jury selection in state cause no. B–2881;

(5) Conviction void where judgment recited prior felony convictions;

(6) Indictment in state cause no. B–2881 fails to state what property Jones intended to steal; and

(7) Indictment in state cause no. 3084, which alleged burglarious entry of a car by "force, threats, and fraud," was defective where petitioner used only force.

The brief filed with the district court by Jones's attorney in the present case stated that (2) is decided adversely to Jones by *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); that there is insufficient evidence to go forward on (4); that (5) is waived; and that the indictments were sufficient as to the infirmities alleged in (6) and (7). Thus, of the new grounds, Jones is now asserting only (1) and (3). Jones did not complain to the district court after remand of its refusal to reconsider the eight grounds ruled upon in the first two petitions and does not here.

court found that Jones had the knowledge and opportunity to present the newly asserted claims in his second federal habeas petition. The district court also found significant the fact that Jones had been represented by appointed counsel in his second federal habeas application and had ample opportunity to discuss with counsel all possible grounds for relief. Concluding that Jones's failure to raise the newly asserted claims in his prior petition was not excusable, the district court again dismissed the petition for writ abuse.

Jones appealed, urging that the only evidence before the district court was his testimony that he had been unaware of the new grounds for relief until after his second federal petition was denied. A panel of this court held that writ abuse had not been clearly established by the evidence before the district court, and reversed the dismissal of Jones's petition. *Jones v. Estelle,* 699 F.2d 793 (5th Cir.1983). Rehearing *en banc* was granted. 711 F.2d 35 (5th Cir.1983). We are not persuaded that the district court abused its discretion and now affirm dismissal of Jones's third federal habeas petition.

## II

New claims in a successive habeas petition must be dismissed if omitting them from a prior petition is an abuse of the writ. 28 U.S.C. foll. § 2254, Rule 9(b). As the advisory committee notes to Rule 9(b) affirm, "[t]his subdivision is aimed at screening out the abusive petitions from this large volume, so that the more meritorious petitions can get quicker and fuller consideration."

Adopted in 1976, Rule 9(b) largely codifies the principles enunciated in *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).[2] Specifically,

if a prisoner deliberately withholds one of two grounds for federal collateral relief

at the time of filing his first application, in the hope of being granted two hearings rather than one or for some other such reason, he may be deemed to have waived his right to a hearing on a second application presenting the withheld ground.... Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay.

*Id.* at 18, 83 S.Ct. at 1078.

*Sanders* relied on *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), and *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), to indicate the limits of the writ abuse doctrine. *Fay* had established that, because habeas corpus is governed by equitable principles, "a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." 372 U.S. at 438, 83 S.Ct. at 849. Though *Fay* involved exhaustion of state remedies, its analysis is equally applicable to successive writs.

According to *Fay,* a petitioner loses the right to have a claim considered on a successive petition if he "understandingly and knowingly forewent the privilege," 372 U.S. at 439, 83 S.Ct. at 849, of raising that claim in his initial petition. The bar "depends on the considered choice of the petitioner." *Id.* But note that the inquiry is not whether the petitioner intended to give up his right to have a claim heard at all. It is whether he withheld it without legal excuse when he filed his earlier petition.

The outer limits of the abuse doctrine are easily stated. A petitioner may in a successive petition assert a new claim based on facts or legal theories about which he had no knowledge when prosecuting his prior habeas petition.[3] *Haley v. Estelle,* 632 F.2d 1273, 1275 (5th Cir.1980).

---

**2.** Although *Sanders* arose under 28 U.S.C. § 2255, which provides relief to persons unlawfully sentenced by a federal court, its analysis is equally applicable to § 2254, which provides

relief to persons unlawfully sentenced by a state court.

**3.** Because our decision today turns on the knowledge attributable to Jones's prior habeas

■ At the opposite end of the spectrum are cases where petitioners are aware of a ground to support a writ but deliberately withhold it and assert it in a later petition. The withheld claim is undoubtedly barred. *See Wong Doo v. United States,* 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924).

The more difficult cases fall between the two extremes into an area where awareness of right and purpose are matters of inference. It is not surprising that many successive habeas petitions fall into this category, for often the very fact that the petition is successive engenders suspicion of writ abuse. Indeed the Supreme Court has recently counseled wariness of successive petitions. *Barefoot v. Estelle,* —— U.S. ——, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983).

Nor is it surprising that procedural rules have flourished in this policy tensioned environment. We pause to describe their prominent features. The Supreme Court held in *Sanders* that abuse of the writ must be specifically pleaded by the government, 373 U.S. at 17, 83 S.Ct. at 1078, while explicitly declining to place on the petitioner the burden of pleading absence of abuse. *See Price v. Johnston,* 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948). Rather, "if the Government chooses ... to claim that the prisoner has abused the writ of *habeas corpus,* it rests with the Government to make that claim with clarity and particularity." *Id.*

■ The government meets its burden of pleading if it notes petitioner's prior writ history, indicates the claims appearing for the first time in the successive petition, and affirms its belief that petitioner is abusing the writ in a manner proscribed by Rule 9(b). In asserting writ abuse the government is by necessity asserting that it is aware of no newly disclosed facts or changes in the law that would justify the filing of a successive petition. Finally, despite the pleading requirements placed on the parties, abuse may be raised *sua sponte* by the district court. *See Sockwell v. Maggio,* 709 F.2d 341 (5th Cir.1983).

■ Once the government has met its burden of pleading writ abuse, or once the issue has been raised by the district court *sua sponte,* the petitioner "has the burden of answering that allegation and of *proving ... by a preponderance of the evidence ... that he has not abused the writ."* *Price v. Johnston,* 334 U.S. at 292, 68 S.Ct. at 1063 (emphasis added).

■ Petitioner's opportunity to carry that burden will not include an evidentiary hearing if the district court determines as a matter of law that petitioner has no chance of justifying the successive petition. *Vaughan v. Estelle,* 671 F.2d 152 (5th Cir.1982); *Johnson v. Copinger,* 420 F.2d 395 (4th Cir. 1969). At any evidentiary hearing the district court should determine whether the failure to raise the new claims in the prior petition was excusable.[4]

These procedural rules reflect the effort to adjust the tension between the need to consider all nonfrivolous claims and the need to prevent manipulation and obstruction of judicial proceedings by successive petitions. The objective is to preserve the proper use of the writ of habeas corpus to win review of unlawful state action, while recognizing that "[t]he advancing of

counsel, we need not here decide whether the knowledge of a pro se petitioner is judged by an actual knowledge standard or by a constructive knowledge—such as a reasonable man—standard.

4. Rule 9(b) originally provided that a successive petition advancing new claims should be dismissed if the failure to raise these claims in the original petition was "not excusable." By amendment, this "not excusable" language was superseded by the current "abuse of the writ" language because Congress feared that the "not excusable" standard was "new and unde-

fined," and "gave a judge too broad a discretion to dismiss a second or successive petition." House Report No. 94–1471, *reprinted in* 1976 U.S.Code Cong. & Ad.News 2478, 2480. This change in terminology did not effect a significant change in the governing standard we use, for our cases define abuse of the writ in terms of whether a petitioner's unawareness of facts or failure to understand the legal significance of known facts is "excusable" or "justifiable." *See, e.g., Sockwell v. Maggio,* 709 F.2d at 344.

grounds for habeas relief in a one-at-a-time fashion when the evidence is available which would allow all grounds to be heard and disposed of in one proceeding, is an intolerable abuse of the Great Writ." *Fulford v. Smith,* 432 F.2d 1225 (5th Cir.1970).

This policy implementation can be expressed in the language of traditional equity precepts. The petitioner who fails to carry his burden of proof at the 9(b) hearing will suffer dismissal of his petition because he has failed to demonstrate the good faith required of one who seeks a remedy governed by equitable principles. As the advisory committee notes to Rule 9(b) state, "[s]ubdivision [9](b) is consistent with the important and well established purpose of habeas corpus. It does not eliminate a remedy to which the petitioner is rightfully entitled." Finally, we note that the primary responsibility for deciding whether a petitioner has abused the writ is with the district court.

> The principles governing ... denial of a hearing on a successive application are addressed to the sound discretion of the federal trial judges. Theirs is the major responsibility for the just and sound administration of the federal collateral remedies, and theirs must be the judgment as to whether a second or successive application shall be denied without consideration of the merits. Even as to such an application, the federal judge clearly has the power—and, if the ends of justice demand, the duty—to reach the merits.

*Sanders,* 373 U.S. at 18–19, 83 S.Ct. at 1079.

These general principles boil down to the idea that a petitioner can excuse his omission of a claim from an earlier writ if he proves he did not know of the "new" claims when the earlier writ was filed. The inquiry is easily answered when the claim has been made possible by a change in the law since the last writ[5] or a development in facts which was not reasonably knowable

before. It is more difficult when we review the efforts of a pro se petitioner to meet his burden of proving excusable neglect. That difficulty surfaces in pro se cases as a greater tolerance for prisoner compliance with these described rules. Such solicitude is not justifiable here because Jones had competent counsel.

### III

Criminal defendants daily entrust their liberty to the skill of their lawyers. The consequences of the lawyer's decisions fall squarely upon the defendant. There is nothing untoward in this circumstance. To the contrary, the lawyer as the defendant's representative is at the core of our adversary process. Whether to call a particular witness, object to evidence, offer additional evidence or rest, or indeed advance a particular defense at all often has immediate and grave impact upon the liberty or even the life of a defendant. So long as the lawyer was competent, the representative character of the relationship between a lawyer and his client will tolerate no other result. In this sense we have consistently held defendants to the decisions of their lawyers. *See Jones v. Barnes,* —— U.S. ——, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

We have carved out certain rights as so basic or "personal" that we do not accept the agency role of the lawyer. We have protected those rights by procedures calculated to insure that any waiver be made by the defendant personally rather than by his lawyer. These rights in the main appear where the defendant relinquishes the protections of the adversary system and his lawyer's role in that system. For example, we have declined to rest on statements of the lawyer in assuring that a plea of guilty be voluntary. That reluctance finds example in the requirement that a judge address the defendant personally at certain critical times such as in deciding whether to accept a plea of guilty or in insuring that an

---

**5.** But the Supreme Court in *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) charges a prisoner with a duty to anticipate changes at the pain of forfeiture under a state contemporaneous objection rule. We do not here define the scope of a petitioner's need to anticipate changes in the law or decide whether the *Engle* duty extends to a habeas petitioner attempting to explain omitted claims. *See also* note 3, *supra.*

indigent defendant understand his right to a direct appeal without expense. *See Martin v. Texas,* 694 F.2d 423, 425 n. 2 (5th Cir.1982). Such circumstances aside, the rights of a criminal defendant are generally insured in the first instance by the constitutionally secured right to a competent lawyer.

■ We have not found a constitutional right to counsel in collateral attacks on a conviction nor found that the "right" to collaterally attack a conviction is such that the omission of a particular claim or theory waives a safeguard so fundamental as to require a personal decision to waive measured by *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Moreover, we find no indication that Congress in enacting Rule 9(b) meant to limit its scope to bar only those claims that had been deliberately and knowingly withheld by the petitioner himself, making no allowance for the agency role of the petitioner's competent counsel. To the contrary, Congress made plain its intent to stem the flood of successive petitions which overtax the judicial system and imperil the full and fair consideration of meritorious writ petitions filed by first-time applicants. Only in very rare cases will it appear that a petitioner represented by counsel made a

personal determination to withhold a habeas claim.[6] If 9(b) were read to bar only these petitioners, the congressional purpose would be stymied. In choosing between two plausible readings of a statute, we will adopt that which more faithfully effectuates the legislative intent while infringing on no recognized individual right.[7]

Having recognized the representative role of counsel when their participation is constitutionally secured, it would be anomalous indeed to deny that role for competent counsel when their participation is not so required as in habeas proceedings. Moreover, much of our habeas jurisprudence is bottomed on the representative role of counsel. In *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Court confronted the failure of counsel to advance a legal theory in the face of a contemporaneous objection requirement of the state. The *Engle* court explained:

We have long recognized, however, that the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim. Where the basis of a constitutional claim is available, and other defense counsel have perceived and litigated that claim, the de-

---

**6.** In *Wong Doo v. United States,* 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924), for example, petitioner asserted two claims but pursued only one. Writ abuse was held to bar the other claim when it was asserted in a successive petition.

**7.** We recognize that a cramped reading of Rule 9(b)'s antecedents in Supreme Court caselaw could support a claim that 9(b) applies only to knowing waivers by the petitioner himself. Rule 9(b), as we have stated, codifies the principles of *Sanders,* which in turn grounds its explication of waiver and abuse in *Fay v. Noia. Fay* defined waiver in terms of an understanding and knowing decision by an individual to forego a claim, and because it made no mention of the representative role of counsel, it could be read to exclude such an agency relationship, thereby expanding the *Johnson v. Zerbst* doctrine. By the time Rule 9(b) was enacted, however, *Fay*'s reach had been substantially limited by *Henry v. Mississippi,* 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965) —a precursor of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)—

which recognized the agency authority of an attorney to waive certain substantive rights of a criminal defendant at trial. Thus, when Congress was considering Rule 9(b), *Sanders* and *Fay* were not then being read by the Supreme Court in a manner which would always require personal waiver by a petitioner.

But even if Congress read *Sanders* and *Fay* to limit the representative role of counsel, it does not follow that this limitation was engrafted into Rule 9(b). *Sanders* was the milestone case in which the Supreme Court explicitly enunciated a writ abuse doctrine. In this sense, Rule 9(b), the writ abuse statute, plainly codifies *Sanders.* However, we have never held that every hint or implication which may reasonably be perceived in *Sanders* is likewise embodied in Rule 9(b). Here, where one such possible ramification of *Sanders* would severely undercut the efficacy of Rule 9(b), logic impels us to hold that this ramification of *Sanders* cannot control our reading of the rule Congress has enacted.

mands of comity and finality so counsel against labeling alleged awareness of the objection as cause for a procedural default.

*Id.* at 134, 102 S.Ct. at 1574–75.[8]

Given this elemental role of counsel in our adversary system, we think it inevitable that the inquiry into excuse for omitting a claim from an earlier writ will differ depending upon whether petitioner was represented by counsel in the earlier writ prosecution. Representation by competent counsel has an immediate impact upon the quality of proof necessary to prove an excuse for omitting a prior claim. With counsel the inquiry is not solely the awareness of a petitioner, a layman, but must include that of his competent counsel. When a petitioner was represented by competent counsel in a fully prosecuted writ he cannot by testimony of personal ignorance justify the omission of claims when awareness of those claims is chargeable to his competent counsel.

Counsel competence in habeas proceedings is not a constitutional inquiry, since a state has no constitutional duty to provide counsel in collateral proceedings. Instead the question is whether such incompetence excuses the failure to include the new claim in the old petition. Even a successive petition seeking to litigate a claim a second time can be considered to prevent an injustice. Equally, incompetence of habeas counsel when it explains an omission or flawed submission can excuse what otherwise would amount to an abuse of the writ.

It does not follow that incompetence of counsel is necessarily established by omission of a claim. The test of competent counsel, as we have repeatedly held,

is "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." The determination of whether a counsel rendered reasonably effective assistance turns in each case on the totality of facts in the entire record. Thus, we must consider a counsel's performance in light of "the number, nature, and seriousness of the charges . . . the strength of the prosecution's case and the strength and complexity of the defendant's possible defenses."

*Gray v. Lucas,* 677 F.2d 1086, 1092 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983) (citations omitted).[9] *See also Lumpkin v. Ricketts,* 551 F.2d 680 (5th Cir.), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977).

The standard for measuring competence of counsel, while developed in the context of constitutional right, is a familiar one. We are persuaded that this standard vindicates the competing values of facilitating judicial review of meritorious claims and finality of criminal convictions in habeas cases. Moreover, drawing upon the relatively well developed principles of counsel competence brings greater predictability and stability to this jurisprudence. In sum, we see no principled reason for not applying to habeas counsel the same measure of their competence that we apply when the Constitution requires the lawyer's work.

## IV

Jones has not urged that Rule 9(b) is here inapplicable because he had not exhausted his state court remedies as to the two claims he now pursues. Given that not

---

**8.** This case does not present the question of whether a lawyer's omission of a claim from an earlier writ petition may be excused by a later change in law which could have reasonably been anticipated. Relatedly, note the suggestion of Justice Blackmun that a state could require a petitioner to assert all claims in a single petition. Escape from a failure to do so would be measured by *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); *Rose v. Lundy,* 455 U.S. 509, 525 n. 2,

102 S.Ct. 1198, 1207 n. 2, 71 L.Ed.2d 379 (1982) (Blackmun, J., concurring in the judgment).

**9.** The standard for gauging effectiveness of counsel is now before the Supreme Court. *Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983); *United States v. Cronic,* 675 F.2d 1126 (10th Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1182, 75 L.Ed.2d 430 (1983).

facing this question would add to an already uncertain jurisprudence where certainty is at a premium and the cases are great in number, and would only trigger a writ attacking the effectiveness of Jones's present counsel, our duty of superintendence requires that we sua sponte address this issue. We conclude that the sole fact that the new claims were unexhausted when the earlier federal writ was prosecuted will not excuse their omission.

In *Paprskar v. Estelle,* 612 F.2d 1003 (5th Cir.), *cert. denied,* 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980) we applied *Galtieri v. Wainwright,* 582 F.2d 348 (5th Cir. 1978), in finding a petitioner excused from abuse when his omitted claims had not been exhausted in the state court at the time he was prosecuting his earlier federal petition. We do not read *Paprskar* as engrafting on the equitable concepts of writ abuse a fixed rule that 9(b) applies only to omitted exhausted claims. There is no suggestion that Paprskar was chargeable with knowledge of his omitted claims at the time of his first writ. Indeed the refusal to find writ abuse in *Paprskar* is largely explained by the equitable tug of his fruitlessly urging counsel to raise an ineffective assistance of counsel argument. But more to the point, neither *Paprskar* nor *Galtieri* faced the question of a petitioner who *is* chargeable with abuse and whose only excuse is a failure to have exhausted the omitted claims, a failure equally unexplainable. We do not ascribe to those cases a consequence antithetical to our consistent interdiction of piecemeal petitions.

Underlying *Galtieri* and *Paprskar* was a greater willingness to tolerate unexhausted claims than the Supreme Court in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), later made plain was allowable. *Galtieri* allowed appellate disposition of mixed petitions and *Paprskar* dwelled upon the absence of connection between the exhausted and non-exhausted

claims. *Lundy* made plain that assertion of the unexhausted claims necessitates dismissal of the mixed petition and that dismissal of a mixed petition does not create a hurdle of writ abuse on petitioner's return. Whatever doubt of that result there was when *Galtieri* and *Paprskar* were decided was ended by *Lundy.*

The *Lundy* court's call for the dismissal of mixed petitions would have little meaning if it could be avoided by withholding unexhausted claims, or deleting them by an amended petition. Justice O'Connor's plurality opinion [10] noted that its rule of dismissal, calculated to accommodate concerns for federalism and finality of conviction with access for state prisoners to the federal courts, required the doctrine of writ abuse for its enforcement.

If a petitioner is aware of claims not included in his federal petition his persistence in prosecuting his federal writ while holding back his unexhausted claims disserves our strong policy against piecemealing claims. Critically, nothing requires that we permit such multiple petitions.

A petitioner who has both exhausted and unexhausted claims faces no ultimate barrier to the federal prosecution of all his claims. He can obtain dismissal of his federal writ, completely exhaust his claims, and, if unsuccessful, return to federal court. Recognition of an automatic excuse from writ abuse for unexhausted claims would perforce be bottomed on recognition of a prisoner's right to persist in prosecution of his exhausted claims while holding back the unexhausted claims. We do not recognize such an unqualified "right" to slice one's claims and present them in successive filings. Nor can *Sanders* fairly be read to limit writ abuse to successive writs filed with a vexatious purpose. *Sanders'* prohibition of vexatious petitions is disjunctive to its prohibition of unnecessary piecemealing. Regardless of the petitioner's subjective

---

**10.** The plurality opinion was joined by Chief Justice Burger and Justices Powell and Rehnquist. Justice Brennan filed a dissent joined by Justice Marshall and in part by Justice White. However, Brennan and Marshall joined part III(b) of Justice O'Connor's opinion which required dismissal of mixed petitions. Justice Stevens filed a separate dissent and Justice Blackmun a concurring opinion.

purpose, the dilution of the Great Writ worked by the addition of a petition which by definition need never have been filed is vexatious. This is true unless we confine the doctrine of writ abuse to those petitioners whose subjective purpose is only to goad the system and not to obtain release. Such a system would be a luxury and not a necessity. Critically, it is not affordable because the price is the genuine efficacy of the Great Writ.

■ We hold only that a petitioner who has persisted in the prosecution of a federal writ while aware of additional but then unexhausted claims faces the hurdle of disproving abuse when in a successive petition he presents the omitted claims.[11] While a petitioner may have an excuse for the omission, such as newly found facts or changes in the law, that the omitted claim was not then exhausted is alone not enough. To hold otherwise would be to hold that a petitioner may present his claims one by one to federal court by exhausting them one by one in the courts of the state.

### V

■ In his second federal habeas application Jones was represented by appointed counsel whose competence he has not questioned. Jones does not claim that since his second habeas petition new law changed the legal significance of facts he earlier knew. Nor does he claim that he has recently learned facts about his conviction which were not previously known to him and which he could not have learned through the exercise of diligence. He testified at the evidentiary hearing before the district court that he did not learn of the legal basis for his new claims until after his second federal petition. But with counsel whose competence he does not question that proof is not enough because Jones is chargeable with that awareness that a competent lawyer would have possessed.

### VI

Jones has advanced no tenable excuse for omitting the "new" claims from his second federal habeas petition. The district court's conclusion that Jones had not carried his burden of showing that he did not abuse the writ was not an abuse of discretion.

AFFIRMED.

### APPENDIX

Jones's writ history can best be seen when graphically depicted.

| Date and Court | Counsel | Disposition |
| --- | --- | --- |
| 1/7/71; state convicting court | pro se | denied; application to Ct. Crim. App. denied 10/6/71 |
| 3/24/72; U.S. Dist. Ct. CA72–H–82 | pro se | denied; cert. of probable cause denied by 5th Cir. 7/31/72 (72–8027) |
| 7/16/73; state convicting court | pro se | denied; application to Ct. Crim. App. denied 9/7/73 |
| 7/17/74; state convicting court | pro se | denied; application to Ct. Crim. App. denied 9/18/74 |

11. See Jones v. Hess, 681 F.2d 688, 695–96 (10th Cir.1982); Boles v. Foltz, 559 F.Supp. 1302, 1305 n. 5 (E.D.Mich.1983); Cartera v. Mitchell, 553 F.Supp. 866, 871 (E.D.Va.1982); Fugett v. Marshall, 541 F.Supp. 293, 294–95 (S.D.Ohio 1982). But see Powell v. Spalding, 679 F.2d 163, 165–66 n. 2 (9th Cir.1982); United States ex rel. Rivera v. Franzen, 564 F.Supp. 723, 725–26 (N.D.Ill.1983); Roland v. Mintzes, 554 F.Supp. 881, 886 (E.D.Mich.1983); Martin v. White, 538 F.Supp. 326, 327–28 (W.D.Mo. 1982).

170

| Date and Court | Counsel | Disposition |
| --- | --- | --- |
| 12/17/76; U.S. Dist. Ct. CA74–H–1554 | Mike DeGeurin, federal public defender service appointed 5/5/75 | denied; aff'd per curiam by 5th Cir. 8/25/77 (77–1290) |
| 3/14/78; state convicting court | pro se | denied; application to Ct. Crim. App. denied 3/29/78 |
| 6/27/78; state convicting court | pro se | denied; application to Ct. Crim. App. denied 7/19/78 |
| 4/2/79; state convicting court | pro se | denied, and petitioner cited for writ abuse; application to Ct. Crim. App. denied and petitioner cited for writ abuse by that court 4/25/79 |
| 4/10/80; U.S. Dist. Ct. CA79–H–1385 | originally pro se; councounsel appointed 10/20/81 | dismissed for abuse of the writ; judgment vacated by 5th Cir. 7/30/81; evidentiary hearing held 10/26/81; petition dismissed for abuse of the writ 12/9/81; judgment reversed by panel of 5th Cir. 3/11/83; panel opinion vacated and rehearing en banc ordered 7/12/83 |

JERRE S. WILLIAMS, with whom RUBIN, TATE, and JOHNSON, Circuit Judges, join, dissenting:

The majority of the Court submits an erudite opinion to establish that prisoner Jones abused the writ of habeas corpus in filing the petition which is before us. But what we are not told is that the intentional or reckless withholding of claimed habeas corpus grounds in the prior petition by Jones is attributed to a prisoner with a fifth grade education. Then, in attributing the responsibility for not raising the issues on habeas corpus earlier, his failure in turn is attributed to that of his appointed attorney in the prior habeas corpus petition. Yet the only evidence in the entire record as to his representation in the second petition by the appointed attorney is that the attorney communicated with him by letter once in preparation for the habeas corpus petition and the prisoner never met his attorney until just before the habeas corpus hearing. Further, the attorney raised and argued only one claim, the claim that Jones had been inadequately represented by counsel in his trial. In this case the facts belie the application of the principles held to be controlling in the opinion of the Court.

The core holding for the Court in this case is that it is an abuse of the writ to file a habeas corpus petition if the prisoner was represented by an attorney in a previous habeas corpus adjudication unless: (1) the prisoner proves his attorney was incompetent in the prior habeas corpus proceeding, or (2) new grounds are raised which developed in the law after the preceding habeas corpus application and such grounds probably could not reasonably be anticipated by the attorney or the petitioner. In general, these are valid guidelines. But they must be applied with balance and understanding. As applied in this case, we have a narrow

and stringent holding which is a radical departure from the development of the law of abuse of the writ in this Court and from the law throughout the country as well.

It is correct, of course, that this Court sitting en banc can abandon its prior authority. But the extent of that abandonment is revealed starkly by comparing the austere and technical reasoning of the majority of the Court with these words from our 1982 decision in *Vaughan v. Estelle,* 671 F.2d 152, 153.

> "Rule 9(b) codifies the seminal case of *Sanders v. United States,* 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963), with its guidelines concerning abuse of the writ." *Potts v. Zant,* 638 F.2d 727, 739 (5th Cir. 1981) (citations omitted). See *Haley v. Estelle,* 632 F.2d 1273 (5th Cir.1980). But, in this circuit, the "'abuse of the Writ' doctrine is of rare and extraordinary application." *Paprskar v. Estelle,* 612 F.2d 1003, 1007 (5th Cir.), cert. denied, 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980) (citation omitted). See *Hardwick v. Doolittle,* 558 F.2d 292 (5th Cir.1977), cert. denied, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978); *Simpson v. Wainwright,* 488 F.2d 494 (5th Cir.1973). The doctrine is applied narrowly because, under this rubric, full consideration of the merits of a new petition is not necessary if the filing is found to be abusive. Our reluctance to invoke the rule, save in rare and extraordinary instances, was dramatized in *Haley v. Estelle* in which we noted that "The principle behind Rule 9(b) is to dismiss those petitions that constitute 'needless piecemeal litigation' or whose 'purpose is to vex, harass, or delay.'" 632 F.2d at 1275 (quoting *Sanders v. United States,* 373 U.S. at 18, 83 S.Ct. at 1078).

We in dissent can find no justification for this drastic departure from the established law concerning abuse of the writ which has developed out of the requirement of a showing of "deliberate withholding" of grounds, *Sanders v. United States,* 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963), or a withholding of grounds resulting from "the considered choice of the petitioner", *Fay v. Noia,* 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963). A careful evaluation of the facts of this case reveals that there has been no abuse of the writ of habeas corpus under Rule 9(b), 28 U.S.C. foll. § 2254.

This is the third federal petition for habeas corpus for this prisoner. The substantial number of state habeas corpus petitions are irrelevant and have nothing to do with a conclusion concerning abuse of the writ in federal courts. The first petition was pro se, and was filed in 1972. The denial was not appealed. Jones filed his second petition pro se in 1974. A federal public defender was appointed to serve as his attorney in that proceeding. Jones originally claimed three grounds in that petition, but his attorney argued only one—the inadequacy of counsel at his trial. The decision on appeal in that case, denying his petition, was rendered by this Court in 1977.

Jones' current petition, his third, was filed pro se in 1982. In this petition, he claimed some 15 grounds, eight of which clearly had been disposed of before. The other seven grounds were new. Some of them properly could be characterized as frivolous. There are, however, at least two claimed grounds, among the new grounds, which are worthy of some consideration. The district court held the filing was an abuse of the writ. We reversed and required the district court to holding a hearing and make findings on whether the writ had been abused or not. *Jones v. Estelle,* 699 F.2d 793 (5th Cir.1983).

At this point, the critical facts of this case develop. The hearing on remand to the district court consisted entirely of the petitioner's own testimony. Petitioner was represented by counsel at this hearing. There is no evidence whatsoever in the record to counter the petitioner's testimony that his lawyer on the second habeas corpus

petition wrote him only once and that he met him for the first time only a short time prior to the habeas corpus proceeding. Petitioner then went on to testify that the grounds which he had alleged in his petition were grounds which he had picked up and read about talking to other prisoners since the final decision in his 1974 petition.

It is of the utmost importance in this case that the only evidence in the hearing on abuse of the writ is the evidence of petitioner himself. Obviously on the basis of this evidence, petitioner did not intentionally forego raising grounds in his two prior petitions. Nor was he guilty of inexcusable neglect in not raising the current grounds. The failure attributed to him must be placed solely upon his attorney in the second petition, and the opinion for the Court does so. Yet, on this record there is not a shred of evidence that petitioner's counsel ever talked to him about other possible grounds or that his counsel carefully read and analyzed the entire record with other grounds in mind. There is no indication that petitioner was warned that his 1974 petition would be his last opportunity to claim grounds already in existence in a federal court in a habeas corpus. The district judge in finding an abuse of the writ after the hearing did not find that the accused could not be credited. Instead, the district court based its conclusion upon findings of fact which do not in any way dispute the state of the record as described immediately above. It is at this point that the abuse of discretion in the decision of the district court occurred.

While the petitioner has the burden of proof to counter the claim of abuse of the writ, that burden of proof was carried by his testimony. If his testimony is credited, there is no possible way that he can be found to be guilty of the abuse of the writ on the ground that he had an attorney at the hearing on the second petition. The opinion for the Court concludes that the competence of his attorney at the second petition is not challenged. Yet, this third

petition was submitted pro se. We honor an obligation to recognize this fact and apply less stringent standards when we are dealing with the pleadings and arguments of a pro se habeas petitioner. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Richardson v. Fleming,* 651 F.2d 366, 368 (5th Cir.1981). Of course the petitioner did not allege in his third petition that his attorney had been less than adequate in the hearing on the second petition. He obviously did not expect a charge of abuse of the writ, and did not fully understand its implications when it occurred. And we might add, neither did the district court. Hence our earlier reversal for a hearing.

The majority of the Court seems to say that in filing his third petition Jones should have recognized that he had to mount pro se a full attack upon the quality and competence of his representation in the second habeas corpus proceeding including proof of his attorney's failure to anticipate every possible ground then in existence which might have merit and upon which his conviction might be challenged. This was a heavy demand on a prisoner with a fifth grade education acting on his own. But then a hearing was held because we directed it. Petitioner was then represented by counsel and testified. He explained the extent of his representation by his attorney in the second habeas corpus proceeding. His sketch of scanty representation for someone serving a life sentence as an habitual criminal was not challenged in any way by the government or by the district court. Yet the majority of the Court in terms concludes that he did not challenge the competence of his legal representation in the second hearing. On the basis of this record that conclusion cannot be supported.

It is not to be denied that there are cases which recognize that having a lawyer in a habeas corpus petition increases the burden upon the petitioner and the lawyer to exhaust all reasonable grounds in a federal habeas corpus petition. Obviously, the re-

sponsibility of raising such issues in this case had to lie with the lawyer and not with the poorly educated prisoner. Yet to carry the principle to the extreme application of this case raises serious implications. After this holding lawyers could well candidly advise that a prisoner is better off acting pro se in a habeas petition unless he is absolutely certain that his lawyer has high skill and total devotion to petitioner's case as well as time to carry out that devotion. And such devotion demands a lawyer who will become fully responsible for the content of the entire record, creatively claiming every possible ground in the petition, and making full effort to anticipate future developments. Lawyers are competent to do this. But it is much to ask of an often poorly compensated lawyer who is handling many such cases as an individual practitioner out of a public defender's or legal aid facility.

The opinion for the Court places heavy reliance upon the case of *Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). It is said that the *Lundy* case had a profound effect upon the abuse of the writ doctrine by requiring mixed habeas corpus petitions which contain some non-exhausted grounds to be dismissed and returned to the state courts for exhaustion. The assertion is that *Lundy* drastically alters the basic *Sanders* rule requiring an intentional or reckless failure to raise habeas issues. But finding such an impact upon the instant case requires a hop, skip, and jump over an abyss with no landing point for the hop and the skip. By definition *Lundy* was dealing with challenges not pursued first in state court. It is a "failure to exhaust state remedies" case. In contrast, exhaustion by Jones had taken place.

It is true that in cases such as *Paprskar v. Estelle*, 612 F.2d 1003 (5th Cir.), *cert. denied*, 449 U.S. 885, 101 S.Ct. 239, 66 L.Ed.2d 111 (1980), we earlier allowed decision on the merits of exhausted claims while allowing later adjudication of non-exhausted claims. But those were known claims. Insofar as *Rose v. Lundy* limits the *Paprskar*

holding it does not address at all the issue of whether the writ is abused by a failure to pursue a claim in a prior federal petition which included exhausted state claims only. The issue in this case is whether the claims now made and omitted from a prior petition were intentionally or recklessly withheld. With that issue *Rose v. Lundy* deals only most obliquely and clearly does not control.

We in dissent do not deny that the writ is subject to serious abuse and that there are many instances of successive petitions for habeas corpus which reveal abuse. But abuse of the writ under the rule has to do with withholding grounds either intentionally or recklessly. There is no evidence in this record that this prisoner is subject to such a conclusive bar either on the basis of his own responsibilities or the attribution to him of the responsibilities of his attorney.

The Court's holding in this case tends to reduce the "Great Writ" to a writ available to the highly educated, the intelligent, and the wealthy who can hire the finest legal service and ensure that every consideration is given to the content of the petition. There is nothing in the position which we here espouse which countenances genuine abuse of the writ by successive petitions when grounds are withheld knowingly or carelessly. But there is no statute of limitations on the serious constitutional claims of prisoners. The majority of the Court creates one in this case without the countervailing justification of requiring that such issues be known and understood to be present or readily discoverable at the time of the earlier petition. With the showing in this record of the inadequacy of the consideration of possible habeas claims by the attorney for petitioner in the second petition, we must not impute to this pro se poorly educated prisoner the abilities of a skilled and highly educated advocate.

This Court has a deserved reputation for the protection of the rights of the least of those among us. But in this case we falter

by not even allowing this prisoner to have determined on the merits these issues which he learned about through fellow prisoners and through reading while in prison. All of his claims may be without substance, and indeed all of them may be frivolous, but on this record he has not abused the writ by asking that they be considered.

The decision of the district court should be reversed and the case remanded for a consideration on the merits of the issues raised by petitioner.