**Ray Jackie MILLER, Appellant,**

v.

**Donald BORDENKIRCHER, Warden, West Virginia State Penitentiary and Attorney General of West Virginia, Appellees.**

No. 84–6077.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 8, 1985.

Decided June 17, 1985.

Wendel B. Turner, Third Year Law Student, College of Law, West Virginia University, Daniel K. Poling, Third Year Law Student, College of Law, West Virginia University (James A. McLaughlin, Charleston, W.Va., on brief), for appellant.

Silas B. Taylor, Asst. Atty. Gen., Charleston, W.Va. (Chauncey H. Browning, Atty. Gen., John Ernest Shank, Asst. Atty. Gen., Charleston, W.Va., on brief), for appellees.

Before PHILLIPS and WILKINSON, Circuit Judges, and WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.

WILKINSON, Circuit Judge:

Petitioner Ray Jackie Miller, a state prisoner serving a sentence of life imprisonment in the West Virginia Penitentiary at Moundsville, seeks a writ of habeas corpus from the federal courts for the third time, pursuant to 28 U.S.C. § 2254 (1982). The district court denied the petition, finding that Miller's claims either had been previously raised or constituted an abuse of the writ. Petitioner appeals. We affirm, holding that Habeas Corpus Rule 9(b) was properly invoked to deny the petition.

### I

Miller pled guilty to the first degree murder of a West Virginia state policeman, Hugh D. Swartz, on March 23, 1971. He was sentenced to life imprisonment with mercy.[1] Before entering his plea, Miller underwent a psychiatric evaluation at Spencer State Hospital. He was diagnosed as having an antisocial personality, but determined not to be mentally ill. No hearing took place on Miller's competency to enter a plea, but before accepting the plea, the state court questioned Miller personally to ensure that the plea was voluntary and that Miller understood his rights.

Since his imprisonment commenced, Miller has filed three federal habeas petitions.

---

1. Had Miller gone to trial and been convicted of the first-degree murder, he faced a potential sentence of life imprisonment with no possibility of parole. The sentence of life imprisonment with mercy gave Miller eligibility for parole after ten years.

The first two were dismissed, and the third is presently before us on appeal from dismissal. Each petition has challenged, in some form, the voluntariness of Miller's plea, the effectiveness of his appointed counsel, or both. As the claims advanced in the prior petitions are crucial to a determination of whether Rule 9(b) bars the claims now asserted, we consider each petition in turn.

Miller filed his first pro se habeas petition in the Northern District of West Virginia on February 18, 1972 (the 1972 petition). In this petition, and an attached 1971 state habeas petition, Miller alleged several constitutional violations, including: denial of the right to counsel when he made incriminating statements during the psychiatric examination; violation of the privilege against self-incrimination because statements elicited by "use or influence of drugs" were used to coerce his guilty plea; and failure of counsel to consult with him, take any other steps on his behalf, or "even prepare a defense." [2] Following a plenary hearing, at which Miller was represented by appointed counsel, the district court dismissed the petition on January 8, 1973, ruling that Miller had "failed to carry the burden of proof or to establish any constitutional deprivation on the grounds presented." The Fourth Circuit, on May 9, 1973, affirmed the dismissal. In holding the appeal without merit, the court specifically noted that Miller had claimed both involuntariness of his plea and ineffective assistance of counsel.

Miller returned to the federal courts on July 8, 1975, when he filed his second pro se petition in the Northern District of West Virginia (the 1975 petition). In this petition, Miller once again challenged the voluntariness of his guilty plea, contending that there was no evidentiary basis for his first degree murder conviction and that the state court had failed to inform him of the nature of the offense and the prosecution's obligation to present evidence. The district court dismissed this petition on October 28, 1977, without a hearing. Examining each of Miller's claims in detail, the court found that the state judge, before accepting Miller's plea, had "ascertained that he understood the nature of the charge against him, the pleading alternatives, the maximum sentence he could receive and that no threats or promises had been made to induce his plea." Based upon the transcript of the state plea hearing, the district court concluded that the plea had been voluntary and intelligent.

Notwithstanding his two prior failures, Miller filed a third pro se habeas petition on June 3, 1981, this time in the Southern District of West Virginia. His latest claims, as analyzed by the district court, may be thus summarized:

1) Petitioner was denied effective assistance of counsel because his court-appointed attorneys:

a) failed to conduct any factual investigation;

b) failed to prepare any defense; and

c) knew that he was incompetent to plead guilty because he was under the influence of the drug "Thorazine" at the time.

2) Petitioner was denied his right against self-incrimination because he had not been warned by the court that he did not have to be a witness against himself.

3) Petitioner's guilty plea was involuntary because he was heavily drugged with "Thorazine" at the time he entered his plea.

The district court, in an October 27, 1981 order, dismissed grounds 1(a) and 1(b), relating to ineffective assistance of counsel, and ground 2, relating to voluntariness of the plea, as successive because they had been raised and decided on the merits in the prior 1972 and 1975 petitions. Petitioner was permitted to explain by affidavit why his failure to assert grounds 1(c) and 3 in prior petitions should not constitute an abuse of the writ. Miller asserted that he

---

**2.** Both the explanation of the self-incrimination claim as drug-related and the ineffectiveness of counsel claim appear in the state petition, from which the quoted material is taken.

had not deliberately withheld or abandoned those grounds, was unaware of the claims, and was illiterate, retarded and dependent upon inmate writ-writers who were not lawyers to prepare his petitions. The district court then referred the remaining ineffective assistance claim, 1(c), and the drug related involuntariness claim, 3, to a magistrate. After consideration of petitioner's affidavit, the magistrate found the petition to be an abuse of the writ, ruling Miller's ignorance an insufficient reason not to dismiss. "The facts supporting the grounds he now alleges were known to him at the time of the trial and at the time of the filing of his prior petitions," the magistrate found, and the ends of justice would not be served by yet another determination on voluntariness of the plea or ineffective assistance of counsel. On August 25, 1983, the district court approved the magistrate's recommendation and ordered final denial of the petition.

## II

This case is governed by Habeas Corpus Rule 9(b), 28 U.S.C. foll. § 2254 (1982), which deals with successive habeas petitions. Rule 9(b) provides:

A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the failure of the petitioner to assert those grounds in a prior petition constituted an abuse of the writ.

Rule 9 is "intended to minimize abuse of the writ of habeas corpus by limiting the right to assert stale claims and to file multiple petitions." Advisory Committee Note, 28 U.S.C. foll. § 2254, Rule 9 at 357.[3] The bar established by Rule 9(b) encourages petitioners to present their claims simultaneously for resolution, rather than fragmenting grounds for collateral relief or advancing endless permutations of the same themes. The Supreme Court has recognized that "[n]othing in the traditions of habeas corpus requires the federal courts to tolerate needless piecemeal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." *Sanders v. United States*, 373 U.S. 1, 18, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148 (1963). The Advisory Committee in turn has condemned successive petitions "submitted in the hope of getting before a different judge in multijudge courts" and claims withheld "in the hope that delay will result in witnesses and records being lost." Advisory Committee Note, *supra*, at 358.

Nor can Rule 9 be divorced from the context of the caseload in federal courts today. There may be some systems where judicial resources are limitless and where the remotest possibility of injustice receives the infinite care and patience that ideally it deserves. In our system, those in pre-trial detention await the chance to claim their innocence; civil litigants seek to ascertain their rights and obligations; those convicted await the resolution of their first petition for collateral review. In this crowded courtscape, federal judges cannot be all things to all people. Rule 9 commands that successive petitions must, of necessity, accommodate the needs of first-time litigants lest the search for justice for all become satisfactory justice for too few.

The district courts must ensure that the multitude of baseless and repetitive petitions do not drown out solitary claims of merit. In the performance of that difficult and often exasperating function, the discretion of the district judge warrants a full measure of appellate respect. Whether a Rule 9(b) dismissal rests on a ground's having been previously decided, or on abuse of the writ, our deference to the district court remains the same:

The principles governing both justifications for denial of a hearing on a succes-

3. Rule 9(a) covers delayed petitions, permitting dismissal where the state has been prejudiced in its ability to respond by the filing delay, unless the petitioner shows he could not have had knowledge of the grounds by "exercise of reasonable diligence." That subsection of Rule 9 is not in issue in this case, as the district court made no finding on any prejudice.

sive application are addressed to the sound discretion of the federal trial judges. Theirs is the major responsibility for the just and sound administration of the federal collateral remedies, and theirs must be the judgment as to whether a second or successive application shall be denied without consideration of the merits.

*Sanders*, 373 U.S. at 18, 83 S.Ct. at 1078. *See Hutchins v. Woodard*, 730 F.2d 953, 962 (4th Cir.1984) (Phillips, J., specially concurring).

Not only was there no abuse of discretion in this Rule 9 dismissal; the judgment of the district court was soundly and properly exercised. For the third time petitioner seeks collaterally to overturn his guilty plea, relying on the same broad themes of ineffectiveness of counsel and involuntariness of the plea. Whether the wine be new or old, the bottles are overly familiar. Furthermore, Miller has not acted entirely pro se, for he was represented by counsel at the hearing on his 1972 petition. Fourteen years have passed since entry of his plea. To entertain this petition on the merits would be to compromise the "presumption of finality and legality" that, even on an initial habeas application, "attaches to the conviction and sentence" imposed by state courts. *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 3391, 77 L.Ed.2d 1090 (1983). To speak thus firmly on the matter is not to speak harshly. At some point, the system must declare that justice has been done insofar as human capacity exists to dispense it, and attempt to focus the attention of those it has incarcerated upon rehabilitation rather than relitigation.

### III

We now turn to claims 1(a), 1(b) and 2 of the present petition, which the district court found to have been previously raised and decided on the merits, and thus barred under Rule 9(b). We conclude that dismissal of these claims was fully within the district court's discretion in light of Miller's prior 1972 and 1975 petitions.

*Sanders* establishes that controlling weight may be given a denial of a prior habeas application if:

(1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.

373 U.S. at 15, 83 S.Ct. at 1077. This test is essentially the same as that now codified in Rule 9(b). *See* Advisory Committee Note, *supra*, at 358; 17 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4267 at 691 (1978). *See also Johnson v. Copinger*, 420 F.2d 395, 398 (4th Cir.1969).

■ There is no doubt that the ineffective assistance of counsel claims, 1(a) and 1(b), referring respectively to failure to investigate and failure to prepare a defense, were properly dismissed as successive. Those claims surfaced in Miller's first habeas petition in virtually identical language, and this circuit's opinion affirming the dismissal recognized that the ineffectiveness contention was pressed. During the hearing on the first habeas petition, the district court observed that Miller's attorneys had advised him that a guilty plea was a good choice and indicated approval of this advice, further remarking that counsel were competent men with a good reputation. Thus, the court addressed the ineffectiveness issue on the merits, even though the final written decision did not refer individually to each of Miller's numerous claims. A cursory opinion is nonetheless a decision on the merits. It may not evidence the court's superficial treatment of claims so much as the superficial nature of the claims themselves. Finally, petitioner bears the burden of showing that the ends of justice would be served by relitigation because a prior hearing was not "full and fair." *Sanders*, 373 U.S. at 16–17, 83 S.Ct. at 1077–1078. The district court here properly concluded that this burden was not met.

Unlike the ineffectiveness claims, claim 2—that Miller was not advised of his right against self-incrimination by the state court—was not specifically addressed in either of the prior petitions. Thus, the question arises whether this assertion is sufficiently similar to the other voluntariness claims to be regarded as the same "ground" for Rule 9(b) purposes. *Sanders* defines "ground" as "a sufficient legal basis for granting the relief sought by the applicant," using the following illustration:

> For example, the contention that an involuntary confession was admitted in evidence against [the applicant] is a distinct ground for federal collateral relief. But a claim of involuntary confession predicated on alleged psychological coercion does not raise a different "ground" than does one predicated on alleged physical coercion.

373 U.S. at 16, 83 S.Ct. at 1077. The Court emphasized that identical grounds might often be proved by different factual allegations, supported by different legal arguments, be couched in different language, or vary in immaterial respects. *Id.*

█ The concept of a "ground" for relief under Rule 9(b) will often be nebulous at the margins. Claims can be dissected with infinite particularity, but the *Sanders* Court has rejected such hair-splitting. Both the 1972 and 1975 petitions challenged the voluntariness of Miller's plea, and the 1972 petition framed the issue in self-incrimination terms as well. Varying formulations of an involuntary plea claim have been treated as the same "ground" by this circuit and others. *See, e.g. Sinclair v. State of Louisiana,* 679 F.2d 513, 514 (5th Cir.1982); *Brown v. Peyton,* 435 F.2d 1352, 1354 (4th Cir.1970), *cert. denied,* 406

U.S. 931, 92 S.Ct. 1785, 32 L.Ed.2d 133 (1972).[4] Voluntariness of the plea, indeed, was the focus of the hearing on the 1972 petition, at which petitioner was represented by counsel. Any assertion that Miller was not advised of his right to silence is necessarily intertwined with both voluntariness and self-incrimination, the merits of which were decided adversely to Miller. While the district court may not have been required to regard claim 2 as the same "ground" as those previously raised and decided, surely there was no abuse of discretion in doing so. We find that the district court acted well within the limits of its discretion under *Sanders* in dismissing claim 2 as successive.[5]

## IV

We next consider claims 1(c) and 3 of the present petition, which were not treated by the district court as successive because previously raised, although they also relate to voluntariness of the plea and ineffectiveness of counsel. Instead, they were dismissed, pursuant to the magistrate's report, as an abuse of the writ under Rule 9(b). Therefore, we also address these claims as an abuse of the writ, and hold that abuse of the writ was properly found under the facts presented.

█ Abuse of the writ under Rule 9(b) may occur where a new and different ground has been withheld from prior petitions due to deliberateness, *Sanders,* 373 U.S. at 18, 83 S.Ct. at 1078, or inexcusable neglect, *Townsend v. Sain,* 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770 (1963). As indicated in the Advisory Committee Note, *supra,* at 358 (citing *Sanders*), the abuse standard developed by the Court forms the basis for the statutory concept,

---

**4.** In *Brown v. Peyton,* the prisoner had alleged in an earlier petition that his plea had been coerced by his court-appointed attorney. We held that this was the same ground as his subsequent allegation that the plea had been coerced by the trial judge, 435 F.2d at 1354, but found that the earlier petition had not been resolved on the merits. *Id.* at 1354–55.

**5.** Even if the district court had elected to find that claim 2 presented a different "ground," it

might still have dismissed the claim as an abuse of the writ. First, however, petitioner would have been entitled to explain his reasons for withholding the claim from earlier petitions, under *Price v. Johnston,* 334 U.S. 266, 291, 68 S.Ct. 1049, 1062, 92 L.Ed. 1356 (1948), and *Johnson v. Copinger,* 420 F.2d 395, 399–400, which the Advisory Committee recognized as the proper approach also under Rule 9(b). Advisory Committee Note, *supra,* at 358–59.

and the judicial formulation of *Sanders* continues to govern application of Rule 9(b) in recent case law. *See, e.g. Rose v. Lundy,* 455 U.S. 509, 521, 102 S.Ct. 1198, 1204, 71 L.Ed.2d 379 (O'Connor, J., plurality opinion in Section III C), 533 (Brennan, J. and Marshall, J., concurring and dissenting in part) (1982); *Jones v. Estelle,* 722 F.2d 159, 163 (5th Cir.1983) (en banc), *cert. denied,* —— U.S. ——, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984); *Robinson v. Fairman,* 704 F.2d 368, 370 (7th Cir.1983). The proof required for abuse of the writ is higher than under Rule 9(a), for when the state has been prejudiced by delay, only a failure to exercise "reasonable diligence" need be shown to bar the petition. In *Johnson v. Copinger,* we ruled that the "deliberately withheld" standard "implies more than simply a failure to present a ground existing at the time of the previous petition," 420 F.2d at 399:

> As a minimum, the newly asserted ground must have been known to the petitioner at the time of his earlier petition. He cannot be charged with having abused the writ of habeas corpus if, at the time of his earlier petition, he was unaware of the facts on which the newly asserted claim is based, or was unaware that those facts could constitute a basis for federal habeas corpus relief.

*Id.*

This is not a case where any new evidence was uncovered subsequent to the earlier petitions, or a retroactive change occurred in the law, situations where abuse would not be found. *See* Advisory Committee Note, *supra,* at 358. Rather, petitioner was aware, as the magistrate found, of the relevant facts at the time of his earlier petitions, namely, whether he was under the influence of Thorazine at the time of his plea and the extent of counsel's knowledge of his condition. Evidently he was also aware that drug use might affect the legal voluntariness of his actions, for his 1972 petition contended that drugs could render his incriminating statements coerced. Likewise, petitioner knew that counsel could be deemed ineffective for failure to prepare a defense, and that invol-

untariness would represent a barrier to the validity of his guilty plea.

■ Petitioner cannot rebut these propositions, which are manifest from examination of his own prior petitions. Instead, he contends that his failure to raise claims 1(c) and 3 cannot constitute a deliberate withholding, in light of his illiteracy, subnormal intelligence, and reliance on prison writwriters. We may assume that Miller's representations regarding the existence of these disabilities are accurate, for our analysis remains unchanged. Such factors as ignorance and unfamiliarity with the law may be relevant to deliberateness, as we recognized in *Johnson v. Copinger,* 420 F.2d at 399, for abuse of the writ doctrine does not impose an "automatic and inflexible forfeiture." *Id. See also Vance v. Bordenkircher,* 505 F.Supp. 135, 136 (N.D. W.Va.1981), *aff'd,* 692 F.2d 978 (4th Cir. 1982), *cert. denied,* —— U.S. ——, 104 S.Ct. 114, 78 L.Ed.2d 114 (1983). Still, such conditions do not inevitably insulate a prisoner from a finding of writ abuse. A large segment of the prison population suffers disabilities similar to Miller's. Congress, in adopting Rule 9(b), expressed no intent to exclude wholesale from the rule's operation nonlawyers or the ill-educated. Lack of particular knowledge of the United States Reports does not preclude a determination that one knew the essentials of a legal claim, and the district court could legitimately find that Miller deliberately withheld his drug-related grounds for collateral relief. Prisoners drafting pro se petitions have the benefit of liberal pleading requirements in bringing all their claims before the courts, *see Price v. Johnston,* 334 U.S. at 292, 68 S.Ct. at 1063, and thus there is no reason why the district courts should be compelled to tolerate delay in cases such as this, which present on the merits no new questions of fact or law.

■ Furthermore, it is highly relevant that petitioner was represented by counsel at his first habeas hearing, whose competence he does not challenge in his present

petition.[6] The Fifth Circuit's recent en banc decision in *Jones v. Estelle,* 722 F.2d 159, 167, holds that a petitioner's allegation of personal ignorance cannot justify omission of claims from an earlier petition when awareness of those claims is chargeable to competent counsel in the prior proceeding. *See also Woodard v. Hutchins,* 464 U.S. 377, 104 S.Ct. 752, 753 n. 3, 78 L.Ed.2d 541 (1984) (affirmative evidence of deliberateness unnecessary when petitioner represented by counsel). It is not necessary that counsel have been unusually vigorous or involved for the agency role recognized in *Jones v. Estelle* to be invoked and deliberateness presumed,[7] only that competence not reasonably be questioned, and that the case present no new evidence or changes in the law. 722 F.2d at 169. We perceive no significant difference between *Jones v. Estelle* and the facts before us here. Petitioner's drug-related involuntariness claim and the accompanying assertion of ineffective assistance of counsel at the time of the guilty plea may be fairly characterized as routine in the world of habeas petitions; indeed, a similar attack on a guilty plea as involuntary due to drug use was the underlying claim on the merits in the seminal *Sanders* decision. Accordingly, we may fairly charge petitioner through his counsel with knowledge of these matters, and we adopt the Fifth Circuit's holding in *Jones v. Estelle* as an alternative ground for finding writ abuse here.

## V

We reiterate that there are few justifications for failure to include all one's claims in the first habeas petition. No such justifications have been offered here. The judgment of the district court dismissing all petitioner's claims under Rule 9(b) is hereby affirmed.

AFFIRMED.

---

**6.** Petitioner's ineffective assistance of counsel claim addressed representation at the time of his guilty plea, not at the time of his first habeas hearing. "Counsel competence in habeas proceedings is not a constitutional inquiry, since a state has no constitutional duty to provide counsel in collateral proceedings." *Jones v. Estelle,* 722 F.2d at 167.

**7.** In *Jones v. Estelle,* the attorney appointed on habeas only communicated once with the prisoner by letter, never met with the prisoner until just before the habeas hearing, and raised and argued only one of the prisoner's several claims. 722 F.2d at 170 (Williams, J., dissenting). Because a competent attorney's role in a case may often be minimal where habeas claims are insubstantial on the merits, we will not preclude representation by counsel from being accorded its usual effect simply because, as in *Jones,* counsel did little.