924 F.2d 1051
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
JOSEPH L. FORSYTH, JR., Petitioner-Appellant,
v.
DAVE WILLIAMS, Warden; ATTORNEY GENERAL OF THE STATE OF
VIRGINIA, Respondents-Appellees.
 No. 89-7681
 UNITED STATES COURT OF APPEALS,
FOURTH CIRCUIT
 Argued: May 8, 1990
Decided: February 4, 1991
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Richmond. David G. Lowe, United States Magistrate Judge. (CA-88-465-R)
 ARGUED: Andrea Celestine Long, BOONE, CARPENTER, BEALE & COSBY, Richmond, Virginia, for Appellant.
 Robert H. Anderson, III, Assistant Attorney General, Richmond, Virginia, for Appellees.
 ON BRIEF: David E. Boone, BOONE, CARPENTER, BEALE & COSBY, Richmond, Virginia, for Appellant.
 Mary Sue Terry, Attorney General, Richmond, Virginia, for Appellee.
 Before WIDENER and MURNAGHAN, Circuit Judges, and McMILLAN, Senior United States District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Joseph L. Forsyth, Jr., who was convicted of forcible sodomy and related offenses, has appealed the denial of his petition for a writ of habeas corpus. The district court rejected three of Forsyth's claims on the basis of procedural default and a magistrate judge rejected a fourth claim on the merits. All four of Forsyth's claims alleged ineffective assistance of counsel.
 
 I.
 A.
 
 2
 Forsyth was accused of sexual assault. After the alleged attack, a pubic hair sample was collected from the alleged victim. At Forsyth's trial in the Circuit Court of Henrico County, Virginia, the government's forensic technician, Detective William A. Morton, explained the reason for collecting the sample, testifying that "on an alleged sexual assault, the pubic area or vaginal area particularly with the female is important as to saliva or any other foreign material secretion from the body. Most specifically in this case, I wanted the hairs or the combings of this area for comparison because I understood that the suspect in question had a mustache." Morton further testified that he checked the alleged victim's house for fingerprints and investigated footprints behind the house.
 
 
 3
 Forsyth's counsel then conducted the following crossexamination:
 
 
 4
 Q Mr. Morton, you said you looked for all the physical evidence that could possibly link up a suspect with a crime, is that correct?
 
 
 5
 A That's correct.
 
 
 6
 Q And you took 5 prints, fingerprints, off of certain areas of the house, is that correct?
 
 
 7
 A Yes sir.
 
 
 8
 Q And none of his fingerprints matched up with the prints that you took? Is that correct?
 
 
 9
 A That's correct.
 
 
 10
 Q The footprints, the footprints that you saw in the yard you say was [sic] not of sufficient detail to get it to make a comparison, is that correct?
 
 
 11
 A That's correct.
 
 
 12
 Q Now, did you know that an officer, or maybe it was you, came to Joseph Forsyth and he gave hair -
 
 
 13
 THE COURT That would have been Detective Dorton.
 
 
 14
 Q Detective Dorton. Uh, did you know that there was no foreign hair found on the victim or the towel or anything in that house that matched up with the hair with Mr. Forsyth?
 
 
 15
 A Not of my own knowledge, I have reports from Consolidated Laboratories which Mr. Commonwealth [sic] has in his possession which would answer that question. To my knowledge, they did not match up.
 
 
 16
 Q So you didn't find anything. You say you looked for all physical evidence. You didn't find any fingerprints, no footprints, no hair or anything that could, would connect Joseph Forsyth to this crime, did you?
 
 
 17
 A Not positive, no sir.
 
 
 18
 Q That's all I have.
 
 
 19
 The government then called a serologist who testified on direct examination that her comparison of the hair samples revealed that none of the hairs found from a combing of the alleged victim's pubic hairs nor any of the hairs found on the shirt she had been wearing were consistent with Forsyth's hairs or the hairs of anyone other than the alleged victim. On cross-examination, Forsyth's counsel asked:
 
 
 20
 Q To summarize, Mrs. Burton, what you just said, is that you found no hairs on the towel, or that came from the victim or any evidence that would be consistent with the hairs of the defendant, here? Is that correct?
 
 
 21
 A That's correct.
 
 
 22
 Q That's all. Now let me ask you one more question. How many hairs does a person shed a day?
 
 
 23
 A I don't know.
 
 
 24
 Q Quite a few, isn't it?
 
 
 25
 A I don't know.
 
 
 26
 Q Thank you.
 
 
 27
 At no point in the proceedings was there any testimony as to the results of the saliva and secretion test referred to by Detective Morton. Indeed, it appears that no such test was ever performed. Forsyth's trial counsel made no mention of the absence of such test results either in his cross-examination or in his closing argument.
 
 
 28
 Despite the absence of any inculpatory physical evidence, a jury ultimately found Forsyth guilty of statutory burglary, forcible sodomy, and sexual battery. On March 11, 1983, he was sentenced to respective terms of five years in the penitentiary, forty years in the penitentiary, and one year in jail, the latter sentence to run concurrently with the first two.
 
 B.
 
 29
 Forsyth has brought several collateral attacks on his conviction. Because of the complexities of federal and state habeas corpus doctrine, we review his attacks in some detail.
 
 
 30
 On February 21, 1984, Forsyth brought a habeas action in the United States District Court for the Eastern District of Virginia, alleging eight grounds of error. On July 18, 1984, the court denied the petition. The court denied the first claim, alleging a double jeopardy violation, on the merits. The court denied the remaining seven claims because they raised only evidentiary issues which, in the absence of special circumstances, did not warrant federal habeas review. On June 25, 1985, we affirmed. Forsyth v. Larsen, No. 84-6565 (4th Cir. June 25, 1985) (unpublished).
 
 
 31
 Forsyth then brought a habeas action in the Henrico County Circuit Court ("the 1986 state habeas action"). In that action Forsyth claimed, among other things, that he was denied effective assistance of counsel because his trial counsel "failed to object to the fact that no physical examination was given the alleged victim." On May 23, 1986, the Henrico County Circuit Court denied Forsyth's petition in a brief opinion which did not identify the basis of decision. Virginia apparently only permits claims of ineffective assistance of counsel to be brought on collateral appeal. See Murray v. Giarratano, U.S., 109 S. Ct. 2765, 2779 n.15 (1989) (Stevens, J., dissenting). Moreover, a petitioner in such an action does not have a constitutional right to counsel. See id. at 2772; Pennsylvania v. Finley, 481 U.S. 551 (1987).
 
 
 32
 Forsyth did not appeal the Henrico County Circuit Court decision within the state system. Forsyth, instead, brought another federal habeas action in the United States District Court for the Eastern District of Virginia on July 15, 1986 ("the 1986 federal habeas action"). Forsyth's petition claimed ineffective assistance of counsel due to alleged prosecutorial harassment of a defense witness and the fact that he was charged with sodomy by force four months after he had been originally charged with the lesser offense of sexual battery.[1] The district court dismissed the petition for failure to exhaust state remedies because Forsyth had not presented his claims to the Supreme Court of Virginia.
 
 
 33
 Forsyth returned to the state system and brought a habeas action directly before the Supreme Court of Virginia on October 19, 1987 ("the 1987 state supreme court habeas action"), alleging ineffective assistance of counsel on four grounds: (a) failure to object to the alleged impropriety of bringing a sodomy charge four months after a sexual battery charge was brought; (b) failure to object to an alleged vendetta the prosecuting attorney held against Forsyth; (c) failure to object to a juror because Forsyth allegedly "thought that [he] had seen [one of the] juror[s] before"; and (d) failure to "argue" that the alleged victim "was not given a physical examination for saliva or any other secretion on the charge of sodomy."
 
 
 34
 The Supreme Court of Virginia dismissed the petition without addressing the merits of Forsyth's claims. The court found the first three claims to be violative of Virginia Code Sec. 8.01-654(B)(2), which provides that "no writ shall be granted on the basis of any allegation the facts of which petitioner had knowledge at the time of filing any previous petition." Presumably, the Virginia Supreme Court was referring to Forsyth's failure to bring the first three claims in the 1986 state habeas action. The Court dismissed the fourth claim as violative of Hawks v. Cox, 211 Va. 91, 175 S.E.2d 271 (1970), which had held that "absent a change in circumstances, previous determination of the issues by either state or federal courts will be conclusive" in subsequent habeas petitions in Virginia state courts. See 211 Va. at 95, 175 S.E.2d at 274.
 
 
 35
 Then, in the habeas action that has led to this appeal, Forsyth brought before the United States District Court for the Eastern District of Virginia the same four claims that he had brought before the Supreme Court of Virginia ("the current federal habeas action"). Noting that the Supreme Court of Virginia had declined to address the merits of the first three claims because they violated Virginia Code Sec. 8.01-654(B)(2), the district court considered those claims under the procedural default doctrine. The district court conscientiously examined Forsyth's contention that the "cause" for his procedural default was his functional illiteracy which prevented him from learning the legal restrictions barring multiple habeas actions. The judge concluded, however, "this Court reviewed the files of the earlier habeas cases and finds that petitioner, contrary to his present perception of his ability in 1984 and 1986, manifested an understanding of court procedure and was more articulate than most pro se litigants."
 
 
 36
 In a separate order, a magistrate judge dismissed Forsyth's fourth claim on the merits. The magistrate judge found that Forsyth could not satisfy the standard of Strickland v. Washington, 466 U.S. 668 (1984). The magistrate judge found that Forsyth's allegation of prejudice from trial counsel's failure to argue that the victim was not given a physical examination was too speculative and that "evidence that none of the collected hairs came from [Forsyth] was introduced," rendering cumulative proof of the absence of inculpatory examination results. At no point did either the district court or the magistrate judge address the government's claim that Forsyth's fourth claim might be barred under the procedural bar doctrine.
 
 
 37
 Forsyth appeals the district court's dismissal of his first three claims and the magistrate judge's dismissal of his fourth claim.
 
 II.
 A.
 
 38
 We believe the district court properly dismissed Forsyth's first three claims under the procedural bar doctrine. The procedural default doctrine provides that, for reasons of comity and finality, petitioners who forfeit state review of constitutional claims by failure to comply with state procedural rules are entitled to federal court review of their claims only under certain limited circumstances. See generally Murray v. Carrier, 477 U.S. 478 (1986); Reed v. Ross, 468 U.S. 1 (1984). According to the Supreme Court of Virginia, Forsyth forfeited state review of his first three claims by failing to comply with a state procedural rule. The court found that Forsyth's first three claims violated Virginia Code Sec. 8.01-654(B)(2) because, although the facts underlying the claims were known to him at the time of the earlier 1986 state habeas petition, he had not included the claims in that petition.
 
 
 39
 The state supreme court's conclusion, however, does not end our inquiry.[2] Forsyth, whose error was the failure to bring together all allegations supporting his ineffective assistance of counsel claim, may obtain federal review of the first three claims if he can show " 'cause' for the default and 'prejudice attributable thereto,' " Harris v. Reed, 489 U.S. at 262 (citing Murray v. Carrier, 477 U.S. at 485), or if a "fundamental miscarriage of justice" otherwise will occur. Id.; see Murray, 477 U.S. at 496; Engle v. Isaacs, 456 U.S. 107, 135 (1982); Coleman v. Thompson, 895 F.2d 139, 144 (4th Cir. 1990), cert. granted in part, U.S., 111 S. Ct. 340 (1990) (No. 89-7662).
 
 
 40
 As "cause" for his failure to comply with the state procedural rule, Forsyth asserted, and the district court considered, a claim of functional illiteracy at the time of the 1986 state habeas petition. The district court, however, found that Forsyth, at the time of the 1986 state petition (and also apparently even during the 1984 federal petition) understood court procedure and was more articulate than most pro se petitioners. Forsyth has presented no evidence demonstrating that the district court's conclusion was clearly erroneous. We see no reason to disturb the district court's conclusion.
 
 
 41
 Because the district court determined that Forsyth was neither functionally illiterate nor so incapable of understanding court procedure as to preclude his ability to raise in 1986 all factual scenarios supporting his ineffective assistance of counsel claim, we do not need to explore whether this circumstance is one in which an illiterate or functionally illiterate pro se petitioner may not be able to demonstrate cause. See, e.g., Henderson v. Cohn, 919 F.2d 1270 (7th Cir. 1990) (concluding that a pro se petitioner's illiteracy did not establish cause for procedural default where the default had arisen from an approximate twenty-year delay in filing for state postconviction relief); Smith v. Newsome, 876 F.2d 1461, 1465-66 (11th Cir.) (Edmondson, J.) (concluding that a pro se petitioner's illiteracy did not establish cause for a procedural default arising from failure to raise the constitutional claim in the first state habeas petition where the issue was within the petitioner's ability to raise); Vasquez v. Lockhart, 867 F.2d 1056, 1058 (8th Cir. 1988) (concluding that a pro se petitioner's "lack of familiarity with the American language and court system" did not establish cause for a procedural default arising from a complete failure to allege ineffective assistance of counsel in either the previous direct appeal or the petition for state postconviction relief), cert. denied, U.S., 109 S. Ct. 2453 (1989); Hughes v. Idaho State Bd. of Corrections, 800 F.2d 905, 909 (9th Cir. 1986) (concluding that a pro se petitioner's illiteracy did not establish cause for a procedural default arising from a failure to pursue the remedy to the state supreme court where the petitioner had been "able to apply for post-conviction relief").[3] But see Hughes, 800 F.2d at 909 (Nelson, J., dissenting) ("I would proceed on the assumption, unless the state shows otherwise, that an illiterate petitioner who was acting pro se at the time of default has cause for the default."); Diggs v. United States, 740 F.2d 239, 244-45 (3d Cir. 1984) ("it wouldappear that application of the 'cause' prong of the cause and prejudice test has little meaning in the context of post-trial proceedings involving indigent litigants because they normally will be without the assistance of those schooled in the technicalities of our appellate procedure"); Strickland v. Marshall, 632 F. Supp. 590, 599 (S.D. Ohio 1986) (holding that "a petitioner who is representing himself on appeal because he is no longer entitled to the assistance of counsel should not be held to a stringent definition of 'cause' "), appeal dismissed, 803 F.2d 721 (6th Cir. 1986).
 
 
 42
 In addition to the cause and prejudice exception to procedural default doctrine, a procedural default will be excused if otherwise there will be a "fundamental miscarriage of justice." See Harris v. Reed, 489 U.S. at 262; Justus v. Murray, 897 F.2d 709, 714 (4th Cir. 1990); Coleman, 895 F.2d at 144. The Supreme Court has construed the term so that "[i]n an extraordinary case where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Murray, 477 U.S. at 496. Although the district court judge did not directly address the issue, neither he nor the other judges and magistrate judges who considered Forsyth's claims indicated that a fundamental miscarriage of justice had occurred. See Justus, 897 F.2d at 714.
 
 B.
 
 43
 Forsyth's fourth claim alleges ineffective assistance of counsel resulting from trial counsel's failure to argue that the alleged victim was not given a physical exam for saliva or any other secretion. As noted above, the Supreme Court of Virginia dismissed the fourth claim as violative of Hawks v. Cox. In Forsyth's subsequent federal petition, the magistrate judge dismissed the claim on the merits.
 
 
 44
 The government argues that the Supreme Court of Virginia's dismissal under Hawks was a procedural default justifying dismissal of the federal claim. The rule in Hawks apparently permits dismissal of "repetitious" petitions, Bland v. Johnson, 495 F. Supp. 735, 736 (E.D. Va. 1980), because "[a]bsent a change in circumstances, previous determinations of the issues by either state or federal courts will be conclusive." Hawks, 211 Va. at 95, 175 S.E.2d at 274. Unfortunately, the terseness of the court's application of Hawks to the fourth claim creates some ambiguity. The court did not identify the prior court determination giving rise to its reliance on Hawks. To the extent that the court was relying upon Forsyth's 1986 state court claim of ineffectiveness for failure to "object to the fact that no physical examination was given the alleged victim" (emphasis added), we note that Forsyth's current claim, and the one addressed by the Virginia Supreme Court, raises the slightly different issue of ineffectiveness for failure to "argue " the absence of test results. Even assuming that the citation of Hawks represents a legitimate procedural bar, we can find no authority holding that Virginia has "consistently or regularly applied" Hawks to bar a claim, similar but not identical to a previously determined claim. Johnson v. Mississippi, 486 U.S. 578, 587 (1988); see Oliver v. Wainwright, 795 F.2d 1524, 1529 (11th Cir. 1986), cert. denied, 480 U.S. 921 (1987); cf. Swanger v. Zimmerman, 750 F.2d 291, 296-97 (3d Cir. 1984); White v. Sowders, 644 F.2d 1177, 1181-83 (6th Cir. 1980), cert. denied, 454 U.S. 853 (1981); see also Hargrove v. Johnson, No. 88-7704 (4th Cir. Jan. 27, 1989) (unpublished) (same, but not binding authority) (suggesting that a state court must correctly apply its procedural default rule).
 
 
 45
 The Supreme Court of Virginia's citation to Hawks does not appear to be an independent and adequate state ground barring federal consideration of the claim. Arguably, the Virginia Supreme Court did not recognize that Forsyth's fourth claim was slightly different from the 1986 state court claim; that is, it should have applied Virginia Code Sec. 8.01-654(B)(2) to the fourth claim. Although Harris contains a footnote stating, "[o]f course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred," 489 U.S. at 263 n.9, Harris ' statement that "it would be more intrusive for a federal court to secondguess a state court's determination of state law," 489 U.S. at 264, suggests that, where the claim was presented to the state courts, cf. Teague v. Lane, 489 U.S. 288, 298-99 (1989) (claim never presented to state courts), a federal court should hesitate before reconstructing alternative theories by which the petitioner could be procedurally barred.[4] In any case, we do not need to resolve the complex interplay of comity, finality, and the procedural bar doctrine, see Reed v. Ross, 468 U.S. 1, 9-11 (1984), because, for the reasons presented below, we believe that Forsyth has not shown ineffective assistance of counsel.[5]
 
 
 46
 Forsyth argues that his trial counsel committed serious and prejudicial error in failing to "apprise the jury of the importance of the lack of results of any saliva or other secretion tests." Forsyth contends that the absence of evidence of such tests leads to the inference that the analysis may well have been conducted but that the prosecutor didn't want the jury to know the results of such tests because they tend to exonerate [Forsyth]. Trial counsel could have gone so far as to reasonably argue that the results of such testing might have shown that the foreign secretions on [the alleged victim's] pubic hairs could not have been from [Forsyth] or from her husband. This would have been quite an embarrassing disclosure for [the alleged victim] and would support [Forsyth's] theory and belief that [the alleged victim] was never sexually attacked ..., but that she was entertaining a lover in her home, in her estranged husband's absence, when her 3 year-old son approached her, causing her to panic that the son might tell his father, thus giving [the estranged husband of the alleged victim] ammunition for a custody suit. [Forsyth] believes he was a convenient scape-goat for [the alleged victim] to point to as the perpetrator of her alleged sexual attack to cover her own infidelity in front of her son.
 
 
 47
 To succeed on his ineffective assistance of counsel claim, Forsyth must show that his trial counsel's performance was deficient and that he was prejudiced by the deficient performance. See Strickland v. Washington, 466 U.S. 668, 687 (1984); Inge v. Procunier, 758 F.2d 1010, 1015 (4th Cir.), cert. denied, 474 U.S. 833 (1985). The first prong of the Strickland test requires that Forsyth show that "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. The second prong requires that Forsyth show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. We think Forsyth meets neither prong.
 
 
 48
 Due largely to the quite competent cross-examination performed by Forsyth's trial counsel, the jury was made fully aware of the fact that the physical evidence did not implicate Forsyth. To the extent that Forsyth alleges ineffectiveness resulting from his counsel's failure to point out the absence of saliva or secretion evidence, the absence of such physical evidence would have been too cumulative either to render trial counsel's performance deficient or to demonstrate prejudice to Forsyth. Moreover, to the extent that Forsyth alleges ineffectiveness from his trial counsel's failure to ask the jury to infer from the absence of test results the conclusion that the government had performed the test, found that it inculpated someone else, and withheld the inculpatory evidence to protect the alleged victim in her ensuing custody battle with her estranged husband, his argument is too speculative. Indeed, to the contrary, it may have been quite reasonable for Forsyth's trial counsel to decline to present that speculative theory to the jury for fear of appearing too desperate. Nor do we find a reasonable probability that the jury verdict would have been different had the jury had before it the theory that Forsyth now proposes.[6] Therefore, we conclude that Forsyth has not made out a claim of ineffective assistance of counsel.
 
 
 49
 The judgments of the district court and the magistrate judge are, accordingly,
 
 AFFIRMED.[7]
 
 
 [1]
 The magistrate judge to whom the case was presented initially reformulated Forsyth's claims by omitting the allegation of ineffective assistance of counsel and restating the substantive allegations as prosecutorial harassment of a witness and improper charging of sodomy by force. Later, however, to avoid the necessity of dismissing the claims as an abuse of the writ pursuant to Rule 9(b) of the Rules Governing Section 2254 Proceedings in the United States District Courts, the magistrate judge returned Forsyth's claims to their original form
 
 
 [2]
 Although Forsyth makes no claim to the contrary, we note that we previously have found procedural foreclosure under Virginia Code Sec. 8.01-654(B)(2), see Waye v. Murray, 884 F.2d 765 (4th Cir.), cert. denied, U.S., 110 S. Ct. 29 (1989), thereby suggesting that the Supreme Court of Virginia applies the rule consistently, as required by the procedural bar doctrine. See Johnson v. Mississippi, 486 U.S. 578, 587 (1988). In addition, the Supreme Court of Virginia's reliance upon its procedural rule was unambiguous. See Harris v. Reed, 489 U.S. 255, 262-63 (1989)
 
 
 [3]
 Miller v. Bordenkircher, 764 F.2d 245 (4th Cir. 1985), addressing illiteracy in the context of abuse of the writ doctrine, is inapplicable to the comity concerns of the procedural default doctrine. Moreover, the Miller court's discussion arose from its perception that "it is highly relevant that petitioner was represented by counsel" during the submission of his first petition. Id. at 251-52
 
 
 [4]
 We note that the Supreme Court recently has granted certiorari in Coleman v. Thompson, 895 F.2d 139 (4th Cir. 1990), cert. granted in part, U.S., 111 S. Ct. 340 (1990) (No. 89-7662). The Court will consider, inter alia, whether under Harris v. Reed, it is permissible for a federal court to analyze state law and the state court record to determine whether federal claims are barred by state procedural default
 
 
 [5]
 The government also urges us to reverse the magistrate judge's decision not to dismiss the claim under Rule 9(b) of the Rules Governing Section 2254 Cases. The magistrate judge concluded that the "record does not establish that petitioner's withholding of his claim from prior petitions was due to deliberateness or inexcusable neglect. See Miller v. Bordenkircher, 764 F.2d 245, 250 (4th Cir. 1985)." Although the government argues that Miller requires dismissal in Forsyth's situation, we find that Miller does not compel such a conclusion. In Miller, Judge Wilkinson emphasized that the petitioner was aware that the "facts could constitute a basis for federal habeas corpus relief." Miller, 764 F.2d at 251 (quoting Johnson v. Copinger, 420 F.2d 395, 399 (4th Cir. 1969)). In specific, earlier petitions had demonstrated the petitioner's knowledge that "drug use might affect the legal voluntariness of his actions" and that "counsel could be deemed ineffective for failure to prepare a defense." Id. The record does not show that Forsyth was aware that the facts-counsel's failure to argue about the lack of physical examination-would support an ineffective assistance of counsel claim for federal habeas corpus relief. See generally Sanders v. United States, 373 U.S. 1, 18 (1963). Indeed, even under the "knew or should have known" standard recently adopted by the Eleventh Circuit-but not by the Fourth-Forsyth could not be said reasonably to have known that the facts constituted legal grounds. See Gunn v. Newsome, 881 F.2d 949 (11th Cir.), cert. denied, U.S., 110 S. Ct. 542 (1989)
 
 
 [6]
 Forsyth does not point to any evidence presented at trial from which a jury could have reasonably concluded that the alleged victim feared her husband would learn of the affair Forsyth alleges
 
 
 [7]
 The government's motion to strike a portion of the record is denied