**Reginald DEAN, Applicant,**

**v.**

**UNITED STATES of America, Respondent.**

**No. 6:88 CV 639.**

United States District Court, E.D. Texas, Tyler Division.

Jan. 26, 1992.

As Amended March 16, 1992.

Stuart Platt, Asst. U.S. Atty., Tyler, Tex., for U.S.

Reginald Dean, pro se.

## AMENDED MEMORANDUM OPINION

JUSTICE, District Judge.

Applicant, Reginald Dean, filed this habeas application under 28 U.S.C. § 2255, attacking his sentence and convictions for his participation in two bank robberies, which were in violation of 18 U.S.C. § 2113.[1] An earlier application raising different claims had been dismissed on the merits. The civil action was referred to the Honorable Judith Guthrie, United States Magistrate Judge, who reviewed applicant's claims on the merits, and recommended that parts of applicant's concurrent sentences be vacated. The government did

not file objections. Subject to the clarifications contained in the opinion below, the report and recommendation of the Magistrate Judge will be adopted.

### I. *Applicant's Claims*

The Magistrate Judge recommended no relief on most of applicant's claims. A *de novo* review of these claims has been conducted, and it is found that applicant's objections are without merit. Accordingly, the report and recommendation of the Magistrate Judge with respect to these claims is adopted.

The Magistrate Judge also recommended vacating portions of applicant's sentence for the two bank robberies. Dean was convicted of violating 18 U.S.C. § 2113 in the robbery of the First National Bank of Bullard, as charged in counts two through four of the indictment. In count two, he was charged with violating 18 U.S.C. § 2113(a), (d), armed bank robbery, by using a dangerous weapon to take $81,000 from Billy Dunklin, President of the First National Bank of Bullard, on September 19, 1985. The charge in count three was identical, except that the victim was Robert Weed, Vice President of the Bank. The charge in count four was kidnapping during the robbery, in violation of 18 U.S.C. § 2113(a), (e).

 It was erroneously adjudged that the sentence imposed in each count should run concurrently with the sentence prescribed with respect to each of the other two counts. "While separate convictions of subsections (a)(d) and (e) of section 2113 may stand, a defendant may receive no more than one penalty." *United States v. Bates*, 896 F.2d 912, 913 (5th Cir.1990); *Keel v. United States*, 585 F.2d 110, 112 (5th Cir.1978) (*en banc*). Sections 2113(a)-(e) "create but a single offense, with various degrees of aggravation, permitting sentences of increased severity." *Sullivan v. United States*, 485 F.2d 1352, 1353 (5th Cir.1973). *See also Keel*, 585 F.2d at 112. To allow sentencing on all three of these counts would violate double jeopardy, by

---

1. Because 28 U.S.C. § 2255 uses the terms "applicant" and "application", those terms will be used instead of the more frequently used "petition" and "petitioner".

imposing unauthorized multiple punishments for the same offense. *See Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 2090, 109 L.Ed.2d 548 (1990); *Jones v. Thomas*, 491 U.S. 376, 381, 109 S.Ct. 2522, 2525, 105 L.Ed.2d 322 (1989) (double jeopardy prohibition on multiple punishments ensures "that the total punishment [does not] exceed that authorized by the legislature."). Hence, all but the longest and most aggravated sentence on counts two through four must be vacated. *See Bates*, 896 F.2d at 913. For the same reason, the concurrent sentences administered for the bank robbery of the Tyler National Bank, counts six and seven, must also be vacated. Each of these counts was for violation of section 2113.

## II. *Collateral Review*

 The Magistrate Judge correctly determined that applicant's claims were subject to collateral review under 28 U.S.C. § 2255. Even if not raised on appeal, a constitutional claim is cognizable under § 2255, unless the applicant deliberately bypassed direct appeal.[2] *United States v. Smith*, 844 F.2d 203, 207 (5th Cir.1988); *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept.1981). As previously discussed, applicant states a constitutional claim that the illegal concurrent sentences violated double jeopardy.

## III. *Successive Petitions*

██ The Magistrate Judge also correctly determined that Dean was not barred from asserting this new ground of relief by the abuse of the writ doctrine embodied in Rule 9(b) of the Rules Governing Section 2255 Proceedings. The Magistrate Judge found that applicant did not raise the claim in the first application because he was acting *pro se* and did not discover the legal significance of the claim until later.

██ Until recently, it would have been clear that applicant's explanation was adequate. Under the doctrine of the United States Court of Appeals for the Fifth Circuit, a successive application raising new constitutional claims was barred from consideration unless the applicant excusably neglected to raise the claim in the first proceeding. *Moore v. Butler*, 819 F.2d 517, 519 (5th Cir.1987); *Jones v. Estelle*, 722 F.2d 159, 163 (5th Cir.1983) (en banc), *cert. denied*, 466 U.S. 976, 104 S.Ct. 2356, 80 L.Ed.2d 829 (1984). When the applicant was represented by counsel, the claim was barred if a reasonably competent lawyer would have known of the factual and legal basis of the claim. *Daniels v. Blackburn*, 763 F.2d 705, 707 (5th Cir.1985); *Jones*, 722 F.2d at 169. When the applicant proceeds *pro se*, however, dismissal of a successive application is not appropriate, unless the applicant "had actual knowledge of the facts and legal theories that form the basis of the newly asserted claim". *Schouest v. Whitley*, 927 F.2d 205, 208 (5th Cir.1991); *Schouest v. Smith*, 914 F.2d 713, 716 (5th Cir.1990); *Matthews v. Butler*, 833 F.2d 1165, 1171 (5th Cir.1987); *Passman v. Blackburn*, 797 F.2d 1335, 1344 (5th Cir. 1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1609, 94 L.Ed.2d 794 (1987). Because Dean did not have actual knowledge of the existence of the claims, consideration of his successive applications is not barred under this doctrine.

██ It must be determined, however, whether the Fifth Circuit's actual knowledge standard is consistent with the Supreme Court's most recent formulation of the abuse of the writ doctrine in *McCleskey v. Zant*, —— U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). Citing the Fifth Circuit's decision in *Jones v. Estelle* with approval, the Court announced that, henceforth, the inexcusable neglect standard would govern dismissal of successive applications raising new claims. 111 S.Ct. at 1468. In an effort to elucidate this standard, the Court held that to establish excusable neglect, the applicant must demonstrate cause for not raising the claim in the

---

**2.** If the applicant has procedurally defaulted on the constitutional claim, for example, by failing to object to a jury charge before deliberation, as required by Fed.R.Crim.P. 30, the applicant must satisfy the more rigorous cause and actual prejudice test in order to obtain review. *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *United States v. Shaid*, 937 F.2d 228 (5th Cir.1991). No procedural default occurred here.

prior application and actual prejudice from the court's failure to consider the claim. 111 S.Ct. at 1468. *See also Cuevas v. Collins,* 932 F.2d 1078, 1081 (5th Cir.1991). Cause, the Court noted, "requires a showing of some external impediment preventing *counsel* from constructing or raising a claim." *McCleskey,* 111 S.Ct. at 1472 (emphasis added).

The *McCleskey* Court did not address, however, whether the same standard would apply to *pro se* applications. In *McCleskey,* the applicant was represented by counsel in both federal habeas applications. *See McCleskey v. Zant,* 580 F.Supp. 338 (N.D.Ga.1984), *rev'd sub nom. McCleskey v. Kemp,* 753 F.2d 877 (11th Cir.1985), *aff'd,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *McCleskey v. Zant,* 890 F.2d 342 (11th Cir.1989), *aff'd,* — U.S. ——, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991). *McCleskey* thus leaves open the question of whether the cause/excusable neglect requirement applies with the same rigidity to applications filed by *pro se* applicants, as when the applicant is represented by counsel. *Woods v. Whitley,* 933 F.2d 321, 324 n. 6 (5th Cir.1991) (court need not decide whether actual knowledge standard for *pro se* applications is consistent with *McCleskey* ).[3]

■ After reviewing the relevant authorities, it is held that the "actual knowledge" test still governs the abuse of the writ doctrine for applications filed by *pro se* prisoners. As the *McCleskey* Court noted, the cause and prejudice standard originated as "the ... standard used to determine whether to excuse state procedural defaults" at trial or on direct appeal.

*McCleskey,* 111 S.Ct. at 1468. *See Murray v. Carrier,* 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (state court appeal); *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (contemporaneous objection at trial). Because the defendant has a constitutional right to effective assistance of counsel in such cases,[4] the cause and prejudice standard was developed in a context where the court could assume that the attorney was reasonably competent and either knew or should have known of the state procedural default. Indeed, in the event that the defense counsel's performance falls below that of a reasonably competent attorney and deprives the defendant of effective assistance of counsel, the defendant is excused from the procedural default. *Murray,* 477 U.S. at 488, 106 S.Ct. at 2645. The cause and prejudice standard, as originally developed, thus has built into it the safeguard that the defendant will be represented by an attorney, and that the average attorney will be reasonably competent and thereby capable of being properly deterred from neglect by a stringent penalty for procedural defaults. *See Murray,* 477 U.S. at 496, 106 S.Ct. at 2650 (right to effective assistance of counsel is "safeguard" against "manifest injustices" in applying cause and prejudice standard).

■ In general, the same assumption of attorney competence applies when a habeas defendant is represented by retained or appointed counsel, even though there is no constitutional right to counsel in habeas proceedings.[5] *See McCleskey,* 111 S.Ct. at 1471; *Pennsylvania v. Finley,* 481 U.S.

---

**3.** In *Woods,* the court determined that the applicant had not met the burden of demonstrating that he did not have actual knowledge of the legal or factual basis of the omitted claim. Applicant claimed that his counsel had been ineffective in failing to suppress evidence as seized without probable cause. The record revealed that applicant had been present at the suppression hearing, and he was urging the same legal theory that had been rejected by the state courts. *Woods,* 933 F.2d at 323–24.

**4.** *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (right to effective assistance of counsel at trial); *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d

821 (1985) (right to effective assistance of counsel on first direct appeal as of right).

**5.** The Fifth Circuit has held that where the failure of counsel to raise a claim in a prior federal habeas application falls so far below the standard of reasonable competence that it would constitute ineffective assistance of counsel, the attorney's inadvertent error constitutes cause for not raising the claim in the first application. *Cuevas,* 932 F.2d at 1083–84; *Jones,* 722 F.2d at 167. *But see Coleman v. Thompson,* — U.S. ——, 111 S.Ct. 2546, 2566–67, 115 L.Ed.2d 640 (1991).

551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987). As the Court emphasized in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), incidents of ineffective assistance of counsel are the exception rather than the rule, and it is appropriate to presume "that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065.

This assumption of reasonable competence by the attorney is inapplicable, however, when the defendant proceeds *pro se* on a habeas application. As the Supreme Court has noted:

> Prisoners are often unlearned in the law and unfamiliar with the complicated rules of pleading. Since they act so often as their own counsel in habeas corpus proceedings, we cannot impose on them the same high standards of the legal art which we might place on the members of the legal profession.

*Price v. Johnston,* 334 U.S. 266, 292, 68 S.Ct. 1049, 1063, 92 L.Ed. 1356 (1948) (reversing dismissal of *pro se* successive application raising new constitutional claim). The Fifth Circuit has also explicitly noted that a less stringent standards for dismissal of successive applications is appropriate for *pro se* applications.

> Given [the] elemental role of counsel in our adversary system, we think it inevitable that the inquiry into excuse for omitting a claim from an earlier writ will differ depending upon whether petitioner was represented by counsel in the earlier writ prosecution. Representation by competent counsel has an immediate effect upon the quality of proof necessary to prove an excuse for omitting a prior claim. With counsel the inquiry is not solely the awareness of a petitioner, a layman, but must include that of his competent counsel.

*Jones,* 722 F.2d at 167.

Since the same standard of performance that is expected of attorneys cannot rea-

sonably be expected of a *pro se* applicant, a more lenient standard for *pro se* applications is appropriate and consistent with *McCleskey.* The Fifth Circuit's five year long experience with the actual knowledge standard demonstrates that the standard is sufficient to further the interest in finality and deter the needless filing of successive applications. As the Advisory Committee Note to Rule 9(b) notes, " 'Most prisoners ... are interested in being released as soon as possible; only rarely will one inexcusably neglect to raise all available issues in his first federal application' " (quoting *Developments in the Law—Habeas Corpus,* 83 Harv.L.Rev. 1038, 1153–54 (1970)). " 'The occasional, highly litigious prisoner stands out as the rarest exception.' " *Id.,* (quoting ABA Standards Relating to Post–Conviction Remedies § 6.2, commentary at 92). Because a *pro se* applicant lacks legal expertise and training, a more rigorous standard will not deter the applicant from omitting a claim in good faith. *See Murray,* 477 U.S. at 524, 106 S.Ct. at 2682 (Brennan, J., dissenting); *Cf. United States v. Leon,* 468 U.S. 897, 908–17, 104 S.Ct. 3405, 3413–18, 82 L.Ed.2d 677 (1984). Refusing to hear a claim of which the *pro se* applicant was not aware will therefore serve no purpose other than to frustrate the interest in protecting against unconstitutional convictions and sentences.[6]

The Tenth Circuit's reasoning in *Rodriguez v. Maynard,* 948 F.2d 684, 687 (10th Cir.1991), holding that a *pro se* applicant who presents new claims in a subsequent federal habeas application "must show cause and prejudice, as those terms have been defined in procedural default cases," is unpersuasive. The opinion did not consider that the cause and prejudice standard has heretofore only been applied where the defendant or prisoner is represented by counsel. The opinion also did not take account of the Supreme Court's recognition in *Price* that a more lenient standard is appropriate for *pro se* applicants, language that the Court did not repudiate in *McCles-*

---

**6.** Continued application of the actual knowledge standard will also not frustrate the interest in finality, noted by the Court in *McCleskey,* 111 S.Ct. at 1468–69. This interest is vindicated by deterring the withholding of claims of which the

*pro se* applicant has actual knowledge. In addition, Rule 9(a) authorizes dismissal of habeas applications if the applicant has delayed unreasonably in filing the application and the state or federal government is prejudiced by the delay.

*key.* Nor did the *Rodriguez* court explain how the cause and prejudice standard applied in *McCleskey* would deter unskilled *pro se* applicants who inadvertently omit a claim in good faith. The court instead rested its holding on the fact that the *McCleskey* Court drew "no distinction between pro se petitioners and those represented by counsel." *Rodriguez*, 948 F.2d at 687. Yet the Court did not state that its doctrine would apply to *pro se* applicants, either. In fact, the Court cited with approval the Fifth Circuit doctrine enunciated in *Jones,* which did draw a distinction between *pro se* applicants and those represented by counsel.

■ Hence, it is concluded that the Fifth Circuit's actual knowledge test continues to govern the abuse of the writ doctrine for *pro se* applications. The cause and prejudice test, adopted in *McCleskey*, originated in a context where the accused is constitutionally entitled to representation by competent counsel. Because there is no right to counsel in habeas cases, proper regard must be given for the lesser abilities of *pro se* applicants in determining what constitutes cause and excusable neglect for failing to raise a claim in a prior application. The Fifth Circuit's actual knowledge test is an appropriate standard by which to measure *pro se* successive applications and is more than adequate to deter the needless raising of new claims. Applicant has therefore demonstrated "cause" and excusable neglect for failure to raise the double jeopardy attack on his concurrent sentences in his first application. It is also held that applicant has demonstrated prejudice, because but for the constitutional error, the concurrent sentences would not have been imposed. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068 (prejudice means that there is a reasonable probability that the result of the proceeding would have been different); *United States v. Frady*, 456 U.S. 152, 169–74, 102 S.Ct. 1584, 1595–97, 71 L.Ed.2d 816 (1982).

■ Even if the cause and prejudice standard applied in *McCleskey* were applicable here, review of applicant's claims would be appropriate under the "fundamental miscarriage of justice" exception.

*McCleskey*, 111 S.Ct. at 1470. Under this exception, an applicant is entitled to review of a new claim, despite the failure to demonstrate cause for failing to raise it in the first application, if the "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496, 106 S.Ct. at 2650; *McCleskey*, 111 S.Ct. at 1470. This exception requires review of a claim that a sentence was illegally imposed, if the habeas applicant presents a "substantial claim that the alleged error undermined the accuracy of the ... sentencing determination." *Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 2668, 91 L.Ed.2d 434 (1986). *See also Dugger v. United States*, 489 U.S. 401, 410 n. 6, 109 S.Ct. 1211, 1217 n. 6, 103 L.Ed.2d 435 (1989); *Cuevas*, 932 F.2d at 1083. Here, applicant has amply demonstrated that because of the constitutional error, sentences were imposed in violation of the statutory scheme and the guarantee against double jeopardy. Dean was clearly "actually innocent" of the unauthorized concurrent sentences imposed. *See Jones v. Arkansas*, 929 F.2d 375, 381 (8th Cir. 1991) (applicant "actually innocent" of life imprisonment sentence where statute did not authorize such a sentence). Accordingly, an order vacating petitioner's concurrent sentences imposed pursuant to Counts 3, 4, and 7, shall be issued.